Bennie BAILEY, Plaintiff–Appellee,

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY,**
Defendant–Appellant.

No. 88–3228.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1989.

Decided Aug. 9, 1990.

Voyle A. Glover, Schererville, Ind., James R. Oates, John Davis, Merrillville, Ind., for plaintiff-appellee.

David C. Jensen, Paul A. Rake, Sherry L. Clarke, Maureen J. Grimmer, Peter L. Hatton, Eichhorn, Eichhorn & Link, Hammond, Ind., for defendant-appellant.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

BAUER, Chief Judge.

Bennie Bailey, a black male, sued his employer, Northern Indiana Public Service Company ("NIPSCO"), for racial discrimination and retaliatory treatment. (He actually sued NIPSCO twice, but more on that later.) In late August/early September, 1988, some of Bailey's claims were tried to a jury, which found in his favor and awarded him compensatory and punitive damages totalling $35,000. In this appeal, NIPSCO contends that the jury's general verdict was fatally tainted by several claims which were legally barred and/or insufficiently proved, and that therefore a new trial is required.

This appeal presents us with a tangled knot of issues, many of which have not been discussed by the parties. Bailey, like most federal employment discrimination plaintiffs (at least before mid–1989), brought his claims under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.;* and 42 U.S.C. § 1981 ("§ 1981"). In June, 1989, the Supreme Court substantially limited the latter cause of action in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a decision which we, like all the other federal appellate courts to address the issue, have decided to apply retroactively to cases (such as this one) that had not become final before *Patterson* was decided. *See McKnight v. General Motors Corp.,* 908 F.2d 104, 110–111 (7th Cir.1990), and the cases cited there. *See also Sims v. Mulcahy,* 902 F.2d 524, 537 (7th Cir.1990); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 424 (7th Cir.1989). *Patterson's* effect on most of Bailey's claims, plus the additional complicating fact that Bailey brought two separate suits against NIPSCO that were (partially) consolidated for the jury trial at issue, form the knot of this case. Our best efforts at untangling it convince us that the judgment entered on the verdict must be vacated, the verdict set aside, and the cause remanded to the district court for further proceedings, which could include a new trial.

## I.

The background most relevant to our disposition of this case is its procedural, rather than factual, history. We will therefore focus on the former.

Bennie Bailey began working for NIPSCO in 1971, and has worked for it continuously ever since. During the years relevant to this case, Bailey worked at NIPSCO's Dean H. Mitchell Generating Station in Gary, Indiana. Bailey's first job at the Mitchell Station was as an apprentice electrician in the electric shop. In 1981 and 1982, when the acts of which Bailey complains began, he was a "high-step" apprentice. (NIPSCO employs an eleven-step apprenticeship program for its electricians, after which one advances to "journeyman" electrician. In 1981–82, Bailey progressed from step seven to step eleven.) Generally, high-step apprentices were supposed to assist the journeymen electricians with the more skilled tasks around the shop, while the lower-step apprentices "paid their dues" by taking care of the more menial tasks.

According to Bailey's contentions, this normal distribution of tasks was skewed at the Mitchell Station because of race. Bailey claims that, in February, 1982, he was several times assigned particularly nasty tasks around the Station (called "nigger's work" by his supervisor), while white high-step apprentices were not given such tasks. He also claims that, throughout this time period (1981–82), he was subjected to "con-

tinuous harassment" by NIPSCO management for racial reasons. Specifically, he claims that he was treated differently than other (non-minority) electricians with similar attendance records with regard to the imposition of discipline, the allowance of sick leave benefits and the like.

Bailey first made these claims to the Equal Employment Opportunity Commission (EEOC) in a charge he filed in December, 1982, alleging Title VII violations. About a year later, the EEOC issued Bailey a notice of right to sue, which invitation he accepted in December, 1983. In this first suit ("Suit 1"), Bailey repeated his claims concerning discriminatory work assignments and harassment, and added a claim that his supervisors retaliated against him for filing the EEOC charge by heightening these practices and "bird-dogging" him (following him around the shop and watching him more closely than other employees). These Suit 1 claims were brought under both Title VII and § 1981.

Suit 1 was assigned to Judge James Moody of the Northern District of Indiana. In December, 1986, Judge Moody bifurcated the Title VII and § 1981 issues, and held a bench trial that same month on Bailey's claims under Title VII. After that one-day bench trial, Judge Moody filed an opinion finding that NIPSCO management intentionally assigned Bailey to particularly distasteful tasks at the Mitchell Station because of his race and as a retaliatory measure for Bailey's filing of EEOC charges. (Judge Moody found the evidence insufficient as to Bailey's other harassment claims.) Judge Moody ordered NIPSCO to stop discriminating on the basis of race in assigning jobs at Bailey's shop and to stop subjecting employees to harassment or differential treatment in retaliation for their opposition to discrimination. Judge Moody also ordered NIPSCO to establish and present to the court a "corrective action plan" to remedy its discriminatory job assignments, and awarded Bailey costs and attorneys fees. Entry of final judgment, however, was withheld pending jury trial on Bailey's § 1981 claims.

The discrimination and retaliation of which Bailey complains is not confined to Suit 1, however. To set the stage for Bailey's additional claims, we must rejoin the story of Bailey's advancement at the Mitchell Station. In September, 1982, Bailey became a journeyman electrician. In July, 1983, Bailey began training for the higher-paying "operator" positions in the production department at the Mitchell Station. Over the succeeding year and a half, Bailey progressed through the various steps of operator training, eventually passing all the requirements for "ash and auxiliary operator." Bailey then began training to be a "relief operator" in the control room.

Potential control room operators must successfully complete on-the-job training in the control room, as well as a week-long simulator course held in Michigan City, Indiana. Bailey took the simulator course the week of October 8–12, 1984. As was customary, a practical test was administered to him on the fifth day of the course, during which he was asked to resolve problems inserted into the simulator by the instructor. Bailey had great difficulty with the test, at one point completely "tripping" the simulator unit off line. His final score on the test was 65%, a failing score that removed him from consideration for an operator position in the control room.

In May, 1985, Bailey filed a second EEOC charge arising out of these events. In this charge, Bailey claimed that NIPSCO management continued the harassment charged in Suit 1, particularly the denial of sick leave pay and the imposition of unwarranted discipline. Bailey also contended that he was given inferior training for, and a more difficult form of, the control room operator test than white control room operator trainees. Bailey claimed that NIPSCO thus purposefully made sure he would fail the simulator test as further racial discrimination against him and retaliation against him for filing the prior discrimination charges.

After receiving a notice of right to sue from the EEOC, Bailey filed a second suit against NIPSCO in November, 1986 ("Suit 2"). Suit 2, which was actually brought

prior to Judge Moody's bench trial on the Title VII issues in Suit 1, was also brought under both Title VII and § 1981. It challenged NIPSCO's alleged continued harassment, as well as NIPSCO's alleged retaliatory actions in failing Bailey on the simulator test. In June, 1987, Judge Moody recused himself from any further involvement in these cases, and Chief Judge Allen Sharp of the same district took them over. In August, 1987, Judge Sharp consolidated the remaining § 1981 claims from Suit 1 with Suit 2. These consolidated cases were then tried to the jury in August/September, 1988.

After a six-day trial, the jury returned a general verdict in favor of Bailey and awarded him $15,000 in compensatory damages and $20,000 in punitive damages. NIPSCO promptly filed motions for new trial and for judgment notwithstanding the verdict ("JNOV") (having properly made motions for directed verdict at the close of Bailey's case and at the close of all evidence). The court denied these motions, as well as Bailey's post-trial motion for additional Title VII or equitable relief, and entered judgment on the jury verdict. NIPSCO filed a timely notice of appeal.

## II.

For the past twenty years or so, victims of racial harassment by their employer could resort to either Title VII, § 1981, or both. Pressing a Title VII charge through the EEOC's elaborate administrative procedures provided individuals a quicker, cheaper and more conciliatory resolution of their claims. Bringing suit under § 1981, while it was most often slower, costlier and more divisive, offered individuals a bigger potential payoff by way of monetary damages. *See generally* M. Player, *Employment Discrimination Law,* §§ 5.71 to 5.83 (pp.

470–98) & § 8.02 (pp. 613–19) (1988). In *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court substantially changed this setup. Focusing on the precise language of § 1981, the Court explained that its protection of the right to make contracts "extends only to the formation of a contract, ... not to problems that may arise later from the conditions of continuing employment." *Id.* at 2372. The Court thus held § 1981 inapplicable to most discriminatory practices by employers which take place on the job, leaving these problems to Title VII and state contract law. *Id.* at 2373 and 2375.

The Court left open, however, the possibility that two classes of post-contract formation conduct remain actionable under § 1981. First, because § 1981 also protects the right to enforce contracts, the Court stated that it still extends to "conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.* at 2373.[1] Second, the court held that a claim of discriminatory denial of promotion remains actionable, if

> the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

109 S.Ct. at 2377. *See also McKnight,* 908 F.2d at 109–10 (analyzing and applying *Patterson*'s "new and distinct relation" test to promotion claim); *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1311–12 (7th Cir.1989) (same).

The impact of *Patterson* on Bailey's claims is considerable.[2] In both Suit 1 and

---

**1.** The Court provided further indication as to the type of employer conduct prohibited by § 1981's reference to contract enforcement: "It also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in enforcing the terms of a contract." *Id.* at 2373 (emphasis in original). For a discussion

of the meaning and application of this portion of *Patterson,* see *McKnight,* 908 F.2d at 111–12.

**2.** We note that NIPSCO did not anticipate *Patterson* by challenging the applicability of § 1981 to Bailey's harassment claims in the district court or in its briefs to this court. NIPSCO first discussed the issue at oral argument (held after *Patterson* was decided) in response to a question

Suit 2, Bailey complains of exclusively post-contract formation conduct by NIPSCO. The vast majority of his claims—discriminatory job assignments, discipline, denial of sick leave pay and "bird-dogging"—are clearly no longer actionable under § 1981. *Cf. Patterson*, 109 S.Ct. at 2373–74 (claims of discriminatory job assignments, discipline and other harassment no longer actionable under § 1981); *Sims v. Mulcahy*, 902 F.2d 524, 537 (7th Cir.1990) (claim of discriminatory tardiness policy no longer actionable); *Lynch v. Belden and Co., Inc.*, 882 F.2d 262, 266–67 (7th Cir.1989) (claims of discriminatory job assignments and being "singled out" because of race no longer actionable).

Two of Bailey's claims which went to the jury may survive *Patterson*, however. First, the court instructed the jury that one of Bailey's claims was that he was denied an "equal opportunity to move into management at a future point in his career." If this alleged discriminatory denial of promotion into management denied Bailey the opportunity to form a "new and distinct relation" between himself and NIPSCO, this allegation may still be actionable under § 1981. *Patterson*, 109 S.Ct. at 2377. *See, e.g., Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908 (4th Cir.1989) (promotion claim that satisfied the *Patterson* test); *Bennun v. Rutgers*, 737 F.Supp. 1393 (D.N.J.1990) (same). The application of this "new and distinct relation" test in this case would require a factual comparison of the nature of the job Bailey already had and the (unspecified) management position he was denied. As the record before us is insufficient for such a factual inquiry, we could remand this issue to the district court. *See Malhotra*, 885 F.2d at 1311–12. Such a remand is unnecessary here, however, because the evidence supplied by Bailey on his promotion claim did not establish the required *prima facie* case of discrimination. Thus, this claim fails as a matter of law and should never have gone to the jury.

A § 1981 plaintiff such as Bailey can meet his burden of proving intentional discrimination either through direct proof of discriminatory intent or through the indirect, burden-shifting method of proof first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *E.g., Lynch*, 882 F.2d at 268–69. Bailey did provide some direct evidence of racial animus on the part of his immediate supervisor in making job assignments. Regarding his alleged denial of promotion, however, Bailey (like most discrimination plaintiffs) could provide no direct evidence of discriminatory intent. Thus, he must resort to the indirect, burden-shifting method of proof, which allows him to raise an inference of discrimination if he makes the requisite *prima facie* case. As the Supreme Court reiterated in *Patterson*, the elements of the required *prima facie* case for a promotion claim are as follows:

> [The employee] need only prove by a preponderance of the evidence that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected [the employer] either continued to seek applicants for the position, or … filled the position with a white employee.

109 S.Ct. at 2378. *See also Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874–75, 104 S.Ct. 2794, 2798–99, 81 L.Ed.2d 718 (1984) (discussing the required *prima facie* case in Title VII context, which we have held to be equally applicable in § 1981 context. *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 568 (7th Cir.1989)).

The record reveals that Bailey did not establish these elements. Bailey testified that when he began as an apprentice electrician at the Mitchell Station he had aspirations of becoming the first black to advance into management at the electric shop. He testified that he gave up these aspirations, however, because the discrimi-

---

from the bench. While failure to raise a point until such a late stage is normally held to equal waiver of that point, the *Patterson* issue is nonetheless properly before this court, both because

*Patterson* is to be applied retroactively and because Bailey himself has never raised the waiver defense. *See McKnight*, 908 F.2d at 107–08.

nation and harassment he received made him afraid to go into management, where he feared he would be more vulnerable to retaliatory action by NIPSCO. This testimony was the sum total of Bailey's evidence directly relevant to the promotion claim. Bailey presented no evidence that he ever applied for or expressed interest in a management position. (The testimony of other NIPSCO employees revealed that one "applied" for a supervisor position by expressing interest in promotion to the master electrician.) Thus, he failed to establish a primary element of his *prima facie* case: that he applied for or was seriously interested in an available position. As Bailey correctly notes, this failure is not fatal if there was evidence that any such application would have been "fruitless" because NIPSCO had a "consistently enforced discriminatory [promotion] policy." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 867 (7th Cir.1985) (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365, 97 S.Ct. 1843, 1869, 52 L.Ed.2d 396 (1977)). Even assuming Bailey could establish such a policy, there exists no similar doctrine to excuse his failure to come forward with any evidence on two of the remaining elements of the *prima facie* case: Bailey offered no evidence that he was qualified for a management position or that NIPSCO, after refusing (or more accurately not offering) to promote him, continued to search for other electricians for management positions or promoted any white electricians to management positions instead of him. Giving full deference, as we must, to the jury's verdict, and viewing all record evidence and any reasonable inferences that can be drawn therefrom in the light most favorable to Bailey, we conclude that Bailey has failed as a matter of law to present sufficient evidence on his promotion claim; the district court should have granted NIPSCO's JNOV motion on this claim. *Cf. McCalpine v. Foertsch*, 870 F.2d 409, 414–17 (7th Cir.1989); *Molthan v. Temple University*, 778 F.2d 955, 961–63 (3d Cir.1985).[3]

Bailey's second claim that may survive *Patterson* involves his failure of the simulator test. Bailey claims that NIPSCO purposefully failed him in that test, and thus barred him from the control room operator position, to retaliate against him for his discrimination complaints. If barring Bailey from this position constituted the denial of an opportunity for a "new and distinct relation" between him and NIPSCO, this claim may still be actionable under § 1981.[4] As with the promotion claim, however, a remand to conduct the comparative factual inquiry required by the "new and distinct relation" test is unnecessary as to the simulator claim. Even if it survives *Patterson*, the simulator claim was not timely filed.

█ Bailey took the simulator course in Michigan City in October, 1984, and failed the test on October 12, 1984. The record reveals that Bailey was notified of his failure, and attendant disqualification from a control room operator position, that same day. In § 1981 cases filed before 1987, we borrow the statute of limitations from the most closely analogous action under the law of the state in which the court sits. *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44

---

3. We note that Bailey's promotion claim fares no better if we adopt the approach taken in some recent decisions and examine whether, viewing the evidence in its totality, Bailey adequately proved that race was a determining factor in his failure to get a promotion. *See, e.g., Hybert v. Hearst Corp.*, 900 F.2d 1050, 1054 (employing this method of review in ADEA case). As Bailey provided no evidence that he was denied a promotion for racial reasons to an available management position in which he was interested and for which he was qualified, his claim must fail under any method of review.

4. Beyond its fate under the "new and distinct relation" test, Bailey's claim of retaliatory failure on the simulator test may be barred after *Patterson* for other reasons. *See Malhotra*, 885 F.2d at 1312–13; *Id.* at 1314–17 (Cudahy, J., concurring) (debating whether claims of retaliation generally remain actionable under § 1981 after *Patterson*). *See also McKnight*, 908 F.2d at 111–12 (discussing whether the specific type of retaliatory conduct claimed by Bailey—retaliation for pressing discrimination complaints—remains actionable under § 1981 after *Patterson*). Because, as we discuss below, Bailey's simulator test claim is barred for another reason, we need not address these issues here.

L.Ed.2d 295 (1975).[5] In this case, the court would borrow from Indiana's statute for employment actions, Ind.Code Ann. § 34–1–2–1.5 (Burns 1986), which provides a two-year statute of limitations in situations such as Bailey's.[6] *Cf. Movement for Opportunity and Equality v. General Motors Corp.*, 622 F.2d 1235, 1241–44 (7th Cir.1980) (adopting the two-year period from Indiana's tort statute, Ind.Code § 34–1–2–2 (1973), in Indiana-based § 1981 cases "absent some more closely analogous statute"). This two-year statute would begin to run on Bailey's simulator claim when he was notified of his failure in the test— October 12, 1984—because that was the date on which he knew or should have known of actionable discriminatory acts by his employer. *See Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1376–79 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987).[7] Thus, Bailey was required to bring his simulator claim under § 1981 by October 12, 1986, but did not in fact file Suit 2 until November 7, 1986, a month too late.

Several doctrines exist under which Bailey could avoid this time-bar. First, because the statute of limitations in this context is an affirmative defense and not jurisdictional, it is waived if not properly raised by the defendant. *Cf. Steinle v. Warren*, 765 F.2d 95, 101 (7th Cir.1985) (In 42 U.S.C. § 1983 suits, "the statute of limitations is an affirmative defense which must be pled or is waived."). *See also McGinty v. United States Dept. of the Army*, 900 F.2d 1114, 1118 (7th Cir.1990) (administrative deadlines in Title VII ac-

tions). Despite Bailey's suggestions to the contrary, however, the record reveals that NIPSCO did in fact sufficiently raise and preserve the timeliness of the simulator claim. NIPSCO first challenged the timeliness of Bailey's claims in its answer to Bailey's Suit 2 complaint, wherein NIPSCO claimed that Bailey had not timely filed his second EEOC charge. NIPSCO raised the statute of limitations specifically regarding Bailey's simulator claim under § 1981 in its trial brief. Then, in response to the district court's pre-trial order concerning the conduct of the trial, NIPSCO again raised in its trial memorandum the statute of limitations as to Bailey's simulator claim under § 1981. The limitations bar was subsequently argued by NIPSCO in its memoranda in support of its motions for directed verdict, and during oral argument on these motions. NIPSCO argued the point again in its post-trial motion for JNOV. At several of these junctures, Bailey responded to the argument by raising the defenses discussed below (he did not suggest waiver until his brief in this court). Thus, NIPSCO sufficiently raised and preserved its limitations defense as to the simulator claim. *Cf. Wagner v. United States*, 573 F.2d 447, 452 (7th Cir.1978) (affirmative defense debated by the parties at trial— which debate did not include an objection by defendant that plaintiff failed to properly plead the defense—tried by implied consent under Fed.R.Civ.P. 15(b)).

Second, Bailey's untimely simulator claim could nonetheless be properly heard if its filing is held to "relate back" to the

---

**5.** In 1987, the Supreme Court changed this general rule and held that federal courts considering § 1981 claims should borrow the limitations period from the relevant state's personal injury statute. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–64, 107 S.Ct. 2617, 2620–23, 96 L.Ed.2d 572 (1987). As both Suit 1 and Suit 2 were brought before 1987, and we have held that *Goodman* does not apply retroactively, *see Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1326–28 (7th Cir.1989), the "most appropriate state statute" rule from *Johnson* applies here.

**6.** This Indiana code section provides:
   All actions relating to the terms, conditions, and privileges of employment ... (including,

but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages or salary) shall be brought within two (2) years of the date of the act or omission complained of.

**7.** Although Suit 2 contains claims of harassment that post-date Bailey's failure in the simulator test, this does not extend the commencement of the running of the statute in this § 1981 context, as these harassment claims are no longer relevant under § 1981 after *Patterson*, 109 S.Ct. 2363. Neither was the statute on the § 1981 claims tolled by the filing of the (second) EEOC complaint alleging Title VII violations. *See Johnson*, 421 U.S. at 465–66, 95 S.Ct. at 1722–23.

date of filing of an earlier, timely pleading. Fed.R.Civ.P. 15(c).[8] In this case, however, the only such earlier timely pleading is the complaint in Suit 1. Rule 15(c), by its terms, only applies to amended pleadings in the same action as the original, timely pleading. Because the simulator claim was not contained in an amended pleading in Suit 1 but in a second, separate complaint, Rule 15(c) is inapplicable.[9]

Finally, Bailey contends that the statute is no bar because the simulator claim was tried by the implied consent of the parties, citing Fed.R.Civ.P. 15(b). Again, Bailey has sought refuge in an inapplicable rule. Rule 15(b) allows a court to treat a claim as having been properly pleaded if it is tried by the express or implied consent of the parties. Far from "consenting" to the trial of the simulator claim, NIPSCO, as we discuss above, repeatedly objected to its inclusion, specifically on timeliness grounds. Thus, given the unavailability of any of these mitigating doctrines, the simulator claim, even if it survives *Patterson*, was time-barred.

Of course, the foreclosure of most of Bailey's claims under § 1981 does not foreclose them under Title VII. Bailey's Suit 1 Title VII claims, which were properly and timely litigated through the EEOC's administrative process, were tried by Judge Moody, who issued an order granting Bailey equitable relief. Although Judge Moody originally withheld final judgment on this order, Judge Sharp has since directed the entry of final judgment on it, as the reason for withholding that entry—jury trial on Bailey's Suit 1 § 1981 claims—has now been satisfied. The relief contained in Judge Moody's order, not challenged in this appeal, remains unaltered.

■ As for Bailey's Suit 2 claims under Title VII (also properly litigated through the EEOC), Judge Sharp refused to grant any relief. He did not do so, however, based on any findings or conclusions regarding whether Bailey's Suit 2 claims state a cause of action under Title VII or whether they were supported by sufficient evidence.[10] He did so, according to his order, because "[a] money judgment has already been entered on the verdict and that judgment is more than adequate to provide all necessary remedies to this plaintiff in these cases." As adequate as it might have been, the jury's award no longer stands. Judge Sharp's denial of Bailey's Suit 2 claims under Title VII, wholly based on that award, must suffer a similar fate. We therefore remand to Judge Sharp to give him the opportunity to enter findings and conclusions on Bailey's Suit 2 claims under Title VII independent of Bailey's

---

**8.** The pertinent portion of Rule 15(c) reads as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading.

**9.** Neither the fact that Suit 2 claimed retaliation for the filing of Suit 1, nor the fact that the two suits (or at least portions thereof) were consolidated for trial, makes Suit 2 an "amendment" to Suit 1. The simulator claim in Suit 2 raises a distinct issue of discrimination and retaliation involving time periods, locations and NIPSCO employees wholly different than those involved in Suit 1 (perhaps explaining why Bailey chose to file a second, separate complaint rather than amend his original complaint). Thus, we reject Bailey's argument that his Suit 2 simulator retaliation claim relates back to the time of filing of Suit 1 because it "arose out of the circumstances and facts of the first complaint."

**10.** In his post-trial orders, Judge Sharp gives some—but not dispositive—clues as to his view of the evidence. Judge Sharp stated that "[t]his case involves a number of very close calls," and that "this court may well have decided this case differently had that function rested solely here," and that "this court might be at odds with the jury's determination of weight and credibility." Nonetheless, he denied NIPSCO's directed verdict, new trial and JNOV motions, stating that "there is sufficient evidence to support a finding of racial discrimination on some of the claims presented to the jury," and that he could not "determine as a matter of law that there is not some arguable factual basis for a finding of discrimination under [§ 1981]." Thus, we are in a much different position than we were in *McKnight*, 908 F.2d at 112–13, in which we determined that a remand to allow the district judge to enter findings and conclusions on the plaintiff's Title VII claims was pointless because we were confident that the district judge would just rubber stamp the jury's verdict. (The judge there afforded the plaintiff additional equitable relief under Title VII.)

(now vacated) jury award under § 1981. Judge Sharp should undertake whatever further proceedings are necessary to give full consideration to these claims, including, if necessary, a new trial. Circuit Rule 36 shall not apply on remand.

### III.

Both Judge Moody and the jury agreed: NIPSCO management discriminated against Bennie Bailey because of his race and retaliated against him for bringing this discrimination to light. The changes effected by *Patterson*, however, have shipwrecked Bailey's case upon "the treacherous and shifting shoals of present-day federal employment discrimination law." *Malhotra*, 885 F.2d at 1313. The jury's verdict and the judgment entered thereon must be vacated. Because Title VII is still available to Bailey, however, the relief ordered by Judge Moody stands, and the case is remanded to Judge Sharp for reconsideration of Bailey's Suit 2 claims under Title VII.

VACATED AND REMANDED.