Betty Jo WEBB, Plaintiff–Appellant,

v.

INDIANA NATIONAL BANK,
Defendant–Appellee.

No. 90–2531.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1991.

Decided May 2, 1991.

Rehearing and Rehearing En Banc Denied
June 20, 1991.

John O. Moss, Moss & Walton, Indianapolis, Ind., for plaintiff-appellant.

James G. McIntire, Richard D. Wagner, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.

POSNER, Circuit Judge.

■ This appeal presents the ever vexing question of when the statute of limitations begins to run in a discrimination case. The plaintiff, who is black, brought suit against her employer under 42 U.S.C. § 1981, charging discrimination in pay and promotions. The parties agree that the "borrowed" statute of limitations applicable to such a claim, when as here it is litigated in a federal district court in Indiana, is two years. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62, 107 S.Ct. 2617, 2620–22, 96 L.Ed.2d 572 (1987); Ind.Code § 34–1–2–2(1); *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406, 411–12 and n. 5 (7th Cir.1990). And the defendant has not—not yet anyway—sought to use *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), or cases following it such as *McKnight v. General Motors Corp.*, 908 F.2d 104 (7th Cir.1990), to curtail the plaintiff's use of section 1981 as an employment-discrimination statute. It has not had to; the district judge held that all

of the plaintiff's claims were time-barred, and therefore dismissed the suit without considering any other issues.

■ The complaint, filed on March 15, 1988, charges that the plaintiff has been working for the defendant since 1969, and that during 1986 and 1987 the defendant paid her less than its white employees, refused to promote her to the position either of portfolio manager or of corporate trust administrator—promoting white employees with less experience to these jobs instead—and denied her the right even to apply for better jobs with the defendant than the one she had. All these acts of alleged racial discrimination were committed within the two years before the plaintiff filed suit, but the district judge held the suit time-barred anyway because pretrial discovery had revealed that the plaintiff knew about the defendant's alleged hostility to black employees more than two years before bringing the suit. As early as 1982 she had come to believe that her race would obstruct her advancement in the defendant's service; between 1982 and 1985 she was excluded, she believes on racial grounds, from various meetings that would have been helpful to her career; and by early 1986, but still more than two years before she filed her complaint, she strongly suspected that, because of her race, she would never be promoted to the position of corporate trust administrator, her particular career goal. In fact, shortly before this, she had discussed applying for that position with her superiors, but they had told her that they were looking for someone with a college degree, which she did not have; she believes this was a pretext for a racially motivated determination to prevent her from becoming a corporate trust administrator. She concedes that any claim she might wish to make based on this or any other acts of discrimination that occurred more than two years before she sued would be barred by the statute of limitations. The only claims she is pressing relate to the subsequent acts of discrimination.

In defense of the decision of the district court the defendant makes a broad and a

narrow argument. The broad argument, which—unbeknownst to the parties, it seems, for they do not cite the case—we rejected in *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 449 (7th Cir.1990), is that the statute of limitations begins to run as soon as a victim of discrimination knows or should know that the defendant is discriminating against him, *even if the act of discrimination on which he wants to base his suit has not occurred yet.* The opinion in *Cada* gives an extreme but illuminating example. Employee X goes to a fortune teller, who gazes into a crystal ball and sees X standing in line for an unemployment check a year later. X believes in fortune tellers. And, sure enough, a year later he is fired. Did the limitations clock start ticking when his fortune was told? Of course not. You cannot be forced to sue before you are injured; you can't, of course, sue for damages until you have been injured, and you cannot obtain even injunctive relief without demonstrating that injury is imminent. Yet the logic of the defendant's position is that the plaintiff should have sued no later than 1984—years before the discriminatory acts of which she complains—since it was back in 1982 that she discovered that the defendant did not treat blacks as well as whites.

■ The relevance of knowledge and reason to know is that the time for suit does not begin to run until you know or should know that you have been injured. *Id.* at 450. Which of course presupposes an injury. And even then, if you cannot by reasonable diligence obtain the information necessary to determine whether you were *wrongfully* injured and therefore have a claim, the running of the statute of limitations will be suspended until you can obtain the information. *Id.* at 451. This is the doctrine of equitable tolling. So, injury plus discovery starts the statute of limitations running; but lack of information about whether the injury is actionable can suspend that running. That in a nutshell is the law of limitations in discrimination cases.

■ In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the plaintiff was (as he knew) denied tenure, and the Court held that the statute of limitations began to run then, not later when his employment contract ran out and—because he had been denied tenure—was not renewed. The denial of tenure was the injury. Tenure is an asset, a form of property, as countless decisions interpreting the rights of public employees under the due process clause of the Fourteenth Amendment attest; often it is the employee's most valuable asset, and when Ricks lost it he lost something of value, and so was injured. The statute of limitations would not have begun to run when Ricks was told (if he had been told) that he would be denied tenure at the next faculty meeting, because that would have been a prediction of injury, not the injury itself. Foreknowledge does not set the statute of limitations running.

But the defendant also has a narrow argument, which is that a plaintiff should not be allowed to defeat the statute of limitations by reapplying for a job, any more than a litigant is allowed to file an untimely motion for reconsideration of an adverse judgment and on appeal from its denial bring up the merits of the judgment. *North American Telecommunications Ass'n v. FCC*, 772 F.2d 1282, 1286 (7th Cir.1985). According to the defendant's version of the facts, the plaintiff was turned down for the position of corporate trust administrator more than two years before she filed suit. She reapplied within the statutory period and was turned down for the same reason, her lack of a college degree. The defendant argues that the plaintiff should not be permitted by the facile expedient of reapplication to force the court to adjudicate the bona fides of conduct outside the period of the statute of limitations. "Any other holding would mean that a plaintiff could always resuscitate a stale claim [of discrimination] by asking for reconsideration." *Dugan v. Ball State University*, 815 F.2d 1132, 1135 (7th Cir.1987). See also *Burnam v. Amoco Container Co.*, 755 F.2d 893 (11th Cir.1985) (per curiam), and cases cited there.

■ This is a good though partial argument—partial because it concerns only one of the positions for which the plaintiff applied—but not one that the district judge discussed or that we can evaluate on this record. Suppose the proper interpretation of the defendant's refusal to consider the plaintiff for the position of corporate trust administrator back in March 1986 just days outside the limitations period is that she would never be considered for the position because she is black; and the plaintiff knew this. Then the refusal to appoint her later was the inevitable consequence of the earlier determination, just as the eventual discharge of Ricks was the inevitable consequence of his being denied tenure; and her suit would indeed be time-barred. But if either that March incident was ad hoc—a decision on *that* application, not for all time—or the plaintiff neither knew nor should have known that it was a decision for all time, then the statute of limitations did not start to run then. A defendant cannot by virtue of its history of discrimination against an employee prevent that employee from complaining about new discriminatory acts. Only if the defendant has made clear that the plaintiff will not receive further consideration is the plaintiff on notice of a permanent exclusion—a freeze, a ceiling on advancement, parallel to a denial of tenure—that starts the statute of limitations running on any future job applications. Or put differently, if it obviously would be futile to make a future application for the job for which he has just been turned down, the plaintiff cannot delay suit and use those futile applications to delay the running of the statutory period indefinitely. Again there are parallels in procedural law—a decision can be final and appealable even though no formal judgment has been entered, *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385–88, 98 S.Ct. 1117, 1120–22, 55 L.Ed.2d 357 (1978) (per curiam), or even though a few loose ends remain to be tied up on remand. *Abood v. Detroit Board of Education*, 431 U.S. 209, 216 n. 8, 97 S.Ct. 1782, 1790 n. 8, 52 L.Ed.2d 261 (1977). When a worker is authoritatively informed that he will never be promoted, that decision is "final" with respect to his promotions, and the statute of limitations begins to run.

The proper characterization of the events of March 1986 is, however, unclear on this record, and that alone would require a remand. But in addition what we are calling the defendant's narrow argument—his only good argument—misses the boat completely with respect to the other promotion that the plaintiff failed to obtain. A further complication is that while we have thus far followed the defendant's terminology of "applied" and "reapplied," these may not be proper characterizations either. What actually happened, slightly more than two years before the plaintiff sued, was that she saw a posting for the position of corporate trust administrator, asked her supervisors about it, and was told they were looking for someone with a college degree. She dropped the matter there. Should an inquiry be equated to an application, and a discouraging answer to a rejection? We have our doubts; to answer these questions in the affirmative would encourage people to sue at the drop of a hat. But we need not resolve the issue, as it may well become moot on remand.

■ There is one more loose end. In addition to complaining about being turned down for promotions, the plaintiff complains about being paid less than the white employees who received the promotions that she considers to have been rightfully hers. The disparity in pay persisted throughout the statute of limitations period; and *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), holds that discrimination in pay (which is actionable under Title VII as well as under 42 U.S.C. §§ 2000e-2(a), 2(h); *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 720–23 (7th Cir.1986)) is a continuing violation: "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII." 478 U.S. at 395, 106 S.Ct. at 3006. Yet how can this decision be reconciled with cases like *Ricks*, which hold that the act of discrimination, rather than the inev-

itable consequences of the act (in *Bazemore,* pay disparities resulting from a discriminatory compensation structure that had been adopted before Title VII was made applicable to public employers), starts the statute of limitations running? One possible answer is that *Bazemore* is a special case. The act of discrimination could not have been challenged when committed, because the statute was not yet applicable to it. The issue therefore was whether the amendment that brought the employer under the statute was intended to grandfather its discriminatory practices, and the Court thought not. But the plaintiff in our case could have challenged the acts that made the disparity in pay of which she complains inevitable: the refusals to promote her. The resulting pay disparity was just that—the result of those refusals. The refusals made the disparity inevitable just as the denial of tenure to Ricks made the termination of his employment inevitable.

The objection to this analysis is that in the process of disposing of *Bazemore* it seems to read the doctrine of continuing violations out of statute of limitations law. Ordinarily, in the case of a continuing unlawful practice, every day that the practice continues is a fresh wrong for purposes of the statute of limitations. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982); *EEOC v. O'Grady,* 857 F.2d 383, 386 n. 7 (7th Cir.1988); *Taylor v. Meirick,* 712 F.2d 1112, 1118–19 (7th Cir.1983). Did *Ricks* abolish this principle? We think not. We adopt the distinction made in *Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.1981), and *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211, 219 (3d Cir.1983), between the present consequence of a one-time violation and the continuation of the violation into the present. The distinction is preserved in *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 2269 n. 5, 104 L.Ed.2d 961 (1989), although some may question whether it was correctly applied there and the soul of that decision, which held that a challenge to a seniority system could not be postponed until the operation of the system actually injured the plaintiffs, may lie not in refined distinctions between *Ricks* and *Bazemore* but in the importance that workers attach to the stability of their seniority rights. *Davidson v. Board of Governors,* 920 F.2d 441, 443 (7th Cir.1990). At all events, this case is firmly on the *Ricks* side of the line, so that if the plaintiff's challenge to the refusals to promote her is barred by the statute of limitations, her challenge to the discrimination in pay consequent upon those refusals is likewise barred; and if not, not.

REVERSED, AND REMANDED WITH DIRECTIONS.