99 F.3d 1142
 8 NDLR P 408
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Scott L. KASEMEIER, Plaintiff-Appellant,
v.
INDIANA UNIVERSITY, et al., Defendants-Appellees.
 No. 95-3745.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 1, 1996.
Decided Oct. 16, 1996.
 
 Before CUMMINGS, COFFEY and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Scott Kasemeier sued Indiana University and some of its employees following his discharge from the university's neural science Ph.D. program. He brought his claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Rehabilitation Act, 29 U.S.C. § 701 et seq.; 42 U.S.C. § 1983; and state contract law. The district court ruled that the federal claims were time-barred, and with all the federal claims out, jurisdiction over the supplemental state claims was relinquished. On appeal the issue is whether Kasemeier's federal claims were time-barred and whether Kasemeier's claims arose prior to the ADA's effective date.
 
 
 2
 Kasemeier entered Indiana University as a Ph.D. student in July 1989. He suffers from myopia, astigmatism, and obsessive compulsive disorder. He informed the university about his condition prior to his matriculation. By 1990 Kasemeier was experiencing academic difficulties. In January 1991 he was advised that he might be dropped from the program due to inadequate progress on his research projects. In May 1991 he was told that he was on probation for the fall of 1991. In a letter signed by an associate dean dated December 20, 1991, the university informed Kasemeier that his "status as a student ... [had] be[en] terminated" as of that date. It further stated that Kasemeier was, therefore, ineligible to enroll for graduate credit toward a degree. On January 31, 1992, Kasemeier filed an application to re-enroll in the graduate program. This application was denied on April 13, 1992. Kasemeier filed the present suit exactly two years later, on April 13, 1994.
 
 
 3
 The parties and the district court agree that for all of the federal claims in this suit the Indiana two-year statute of limitations for personal injuries, IND.CODE § 34-1-2-2(1), applies. The dispute concerns whether Kasemeier's claims arose upon the denial of his application for re-enrollment in April 1992, so that his claims would be timely, or when he was informed in December 1991 that he had been expelled from the program, so that his claims would be time-barred. The district court concluded that it was the latter. Not surprisingly, Kasemeier takes issue with this assessment, while the defendants are satisfied that it was the right call. The defendants also argue that Kasemeier cannot bring an ADA claim because that statute's effective date was after any acts by the university that could be considered discriminatory. Kasemeier responds that provisions of the ADA relevant for his claims went into effect on January 26, 1992, while the university rejected his application for readmission after that date, on April 13, 1992.
 
 
 4
 We conclude that Kasemeier's Rehabilitation Act and § 1983 claims are time-barred and that he cannot state any claims under the ADA because the record shows that any alleged actions by the defendants that could be deemed to violate that statute occurred before its effective date. We also affirm the district court's decision to relinquish jurisdiction over the supplemental state claims.
 
 
 5
 We first explain the reasons that Kasemeier's Rehabilitation Act and § 1983 claims are time-barred. A statute of limitations begins to run at the time a plaintiff is injured. Webb v. Indiana Nat'l Bank, 931 F.2d 434, 436 (7th Cir.1991). Kasemeier claims that the university and the individual defendants violated his rights by failing to accommodate his needs during the time that he was enrolled in the graduate program and by expelling him. Thus, if Kasemeier suffered any injury, he certainly had done so by December 20, 1991, when he claims the university unlawfully terminated his enrollment. Kasemeier argues, however, that when the university denied his application it was part of a continuing pattern of discrimination, and that, therefore, he could sue for all of the defendants' actions any time within two years of the final discriminatory act. He claims that the last act of discrimination was the April 13, 1992, denial of his application for readmission. Kasemeier argues in the alternative that even if the defendants' conduct did not amount to a continuing violation, so that he cannot recover for the acts that occurred more than two years before he filed suit, the denial of his application for readmission was its own wrong that occurred within two years of his filing suit, and that at minimum a claim based upon the denial of his application for readmission is not time-barred.
 
 
 6
 Kasemeier's arguments are not persuasive. It is clear that Kasemeier's application for readmission was not effective to restart the limitations period for claims based upon either all the acts of the defendants (a continuing violation theory) or for a claim challenging just the denial of the reapplication. Under the continuing violation theory, an activity that occurs outside the limitations window (that is, prior to the earliest act for which the plaintiff's suit would be timely--April 13, 1992, in this case (two years before he filed suit)) "can be challenged if it is part of a pattern of discrimination that extended into the limitations period." Chambers v. American Trans. Air. Inc., 17 F.3d 998, 1003 (7th Cir.), cert. denied, 115 S.Ct. 512 (1994). In order for a plaintiff to make out a claim under the continuing violation theory, a defendant must commit at least one act of discriminatory conduct within the limitations window. Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1528 (7th Cir.1990). Therefore, if a plaintiff could not make out a claim based upon a single act within the statutory period, then he cannot make out a claim based upon a continuing violation theory.
 
 
 7
 In the present case, the only act that could form the basis for Kasemeier's claims that occurred within the limitations window was the university's denial of Kasemeier's application for readmission on April 13, 1992. As will be explained, Kasemeier's attempt (as an alternative to his suing under a continuing violation theory) to sue solely upon this conduct by the university, is barred by the statute of limitations. As such, his effort to claim that the defendants' actions were part of a continuing course of conduct, with the April 13, 1992, denial of his application for readmission as the actionable conduct that occurred within two years of his filing suit, is also futile.
 
 
 8
 When a defendant terminates its relationship with a plaintiff (whether the relationship is school/student, employer/employee or some other relationship whereby improper severance violates federal law), the point at which the defendant actually undertakes the termination (not the effective date if such is later) starts the clock on the statute of limitations. Webb, 931 F.2d at 435. If the defendant makes it clear to the plaintiff that its decision is final and will not be revisited, so that a future application for reinstatement by the plaintiff would be useless, then the defendant's denial of an application for reinstatement is not considered a new act that restarts the statute of limitations. Id. at 437.
 
 
 9
 In the present case, the university, in its letter of December 20, 1991, informed Kasemeier that his student status would be "terminated," and that Kasemeier was "now ineligible to enroll" in additional courses. The university was unequivocal in its position that Kasemeier would not be allowed to continue his studies. The unequivocal language of the letter gave Kasemeier no reason to believe that the university would change its mind if he reapplied. Kasemeier's claim that he did not know that he had been permanently expelled until he received the university's April 13, 1992, denial of his application for readmission, is unavailing. Kasemeier has not alerted us to any difference in the nature of the two correspondences that would justify his believing that the decision reflected in the December 20 letter was any less final than the decision reflected in the April 13 letter, which he admits he understood as finally terminating his enrollment. We also find his argument that he reapplied to the university following the December 20 termination in order to exhaust his administrative remedies, and that therefore the limitations period should be tolled during the pendency of the university's decision on that application, to be unpersuasive. The university had made it clear in its December 20 letter that its decision was final; it did not hold open administrative remedies to Kasemeier. Moreover, a plaintiff need not make use of a defendant's internal appeal mechanism before bringing suit under any of the statutes that Kasemeier seeks to invoke in this case, and therefore such appeals do not toll a statute of limitations. Soignier v. American Bd. of Plastic Surgery, 92 F.3d 547, 553 (7th Cir.1996).
 
 
 10
 There is an additional twist in the present case. Kasemeier asserts that because the ADA became effective after the university expelled him but prior to his reapplication, his reapplication was not futile, notwithstanding what the university said in its prior letter: It was not futile because now he was applying under a new regime, one in which the protections of the ADA governed. As support, Kasemeier cites Piquard v. City of East Peoria, 887 F.Supp. 1106, 1117 (C.D.Ill.1995) ("[Plaintiff's ... application for admission into [a pension] Fund [following the defendant's clear indication that they would not be allowed to join the fund] be[gan] the application process again in view of the newly-enacted ADA.... [I]t was not 'obviously futile' for Plaintiffs to reapply for admission into the Fund after the ADA's effective date."] ).
 
 
 11
 The reasoning that the Central District applied in Piquard (which at any rate is not binding precedent on this court) does not mandate our finding that an application for reinstatement restarts the limitations period in a case like the one presently before us. In Piquard the court reasoned that the defendant's unlawful exclusion of the plaintiffs from a pension fund resulted in a new wrong being visited upon the plaintiffs with each new paycheck the plaintiffs received from which no contribution was made into the pension fund. Id. at 1116. In contrast, in the instant case, Kasemeier does not argue that the university's December 20 termination of his enrollment itself exposed him to a series of continuing harms; the only additional harm Kasemeier cites is the university's denial of his application for readmission which, as we explain below, was not an additional and independent injury. In concluding that the limitations period did not begin to run until the defendant denied the plaintiffs' reapplications to join the pension plan, the Piquard court distinguished the type of case it was then deciding (an illegal act which causes a series of discrete subsequent harms to the plaintiff) from cases where the defendant's termination of a benefit that it had been conferring on the plaintiff is a one-time act that severs the relationship between the parties (as the December 20 letter did in the present case). Id.; see Webb, 931 F.2d at 438 (discussing the distinction between "the present consequences of a one-time violation and the continuation of the violation into the present").
 
 
 12
 Were we to accept Kasemeier's invitation to extend Piquard 's reasoning to cases involving a single act that terminates the relationship between a defendant and a plaintiff so as to measure the limitations period from the time that the university rejected his application for readmission, we would create a black hole that would swallow the rule that it is the defendant's illegal discharge (or expulsion) of the plaintiff that starts the clock on the statute of limitations, not the subsequent adverse effects of the defendant's actions. Under such an approach, a plaintiff could always obtain a fresh limitations period by presenting the defendant with an application for reinstatement. Webb, 931 F.2d at 435. Such a result would be at odds with one of the purposes of statutes of limitations, "to secure repose for defendants--to let them go about their business, after a definite time, untroubled by fear of being sued...." Village of Bellwood, 895 F.2d at 1527. Thus, we conclude that it was clear from the December 20 letter that it would be fruitless for Kasemeier to reapply for admission to the university, and that the intervening effective date of the ADA does not change this characterization of the situation. Therefore, we hold that Kasemeier's Rehabilitation Act and § 1983 claims are time-barred.
 
 
 13
 With regard to Kasemeier's ADA claims, we hold that this statute was not effective until after any allegedly discriminatory acts by the defendants. The portion of the ADA applicable to Kasemeier's claims, 42 U.S.C. §§ 12131-12134, became effective on January 26, 1992, Pub.L. 101-336, § 205, which was after the university's final termination of Kasemeier's status as a student, but prior to his reapplication for enrollment. Kasemeier impliedly concedes that this act does not apply retroactively to the university's actions prior to the law's effective date. See Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 545 (7th Cir.1995). His argument is that the ADA had become effective by the time the university rejected his application for readmission, so that the Act should apply to this denial.
 
 
 14
 At first glance, Kasemeier's argument has some appeal. One could argue that if a plaintiff, who had no prior connection to the university, submitted his first application for admission to the university following the passage of the ADA and was rejected in violation of that law on the same date that Kasemeier's application for readmission was rejected, this person would have two years from the time of his application to bring a claim, while Kasemeier, who argued that the rejection of his reapplication was also in violation of the ADA, would not be able to sue at all under the ADA because, under Webb, the relevant discriminatory act was the university's initial termination of his enrollment, which occurred prior to the ADA's effective date. Viewed from this angle, it is as if the university is being rewarded and Kasemeier punished because the university had previously undertaken acts against Kasemeier that would have violated the ADA had it been effective at the time.
 
 
 15
 The reason this argument should not prevail lies in the theory behind Webb 's barrier to restarting the limitations period upon a subsequent application for a previously withdrawn benefit: the denial of the application is not a fresh act of discrimination if it "was the inevitable consequence of the earlier determination...." 931 F.2d at 437. In the instant case, the university made its decision on Kasemeier's status in December 1991; its denial of his reapplication was merely the result of the university's previous decision that based upon his record he could not continue as a student. The ADA was not yet effective in December 1991, when the university expelled Kasemeier (the other federal statutes under which Kasemeier brings his claims were, but that does not matter with respect to Kasemeier's ADA claims), so the university could not have violated the ADA (which is not retroactive) in making that decision. As such, its denial of his application for readmission did not violate the ADA because the decision on that application was effectively made when Kasemeier was expelled.
 
 
 16
 One note of caution is in order regarding this issue. Webb provides that the denial of an application for reinstatement is not an act of discrimination in itself, if the denial is a foregone conclusion based upon the prior severance of the plaintiff's relationship to the defendant. 931 F.2d at 434. Conversely, if the defendant's initial decision to terminate its relationship with the plaintiff "was ad hoc" (a one-time decision that did not foreclose future consideration of the plaintiff's status), then a subsequent denial of an application for reinstatement can be treated as its own act of discrimination, restarting the statute of limitations at least as far as that act is concerned. Id. at 437. From this reasoning it follows that if a defendant denies a plaintiff's attempt at reinstatement based upon an independent discriminatory reason, as opposed to denying the application because it had previously made up its mind when it initially expelled the plaintiff, that act could provide grounds for a lawsuit and the statute of limitations would run from that point forward. Without this safety valve, a defendant who had discharged a plaintiff prior to the passage of the ADA (for reasons that either would or would not have violated the ADA had it been effective at the time) could forever discriminate against that plaintiff. That is not what happened in the present case and, therefore, we hold that Kasemeier has not cited any actions by the defendant after the ADA's effective date that violated that statute. Therefore, we affirm the district court's grant of summary judgment for the defendants on Kasemeier's ADA claims.
 
 
 17
 Finally, with all the federal claims having been dismissed before trial, the district court acted within its discretion in relinquishing jurisdiction over the supplemental state claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Wright v. Associated Insurance Cos., 29 F.3d 1244, 1251 (1994).
 
 
 18
 AFFIRMED.