No. 17-0620 – *Raven Crest Contracting, LLC et al v. Adkins*

LOUGHRY, Chief Justice, concurring:

FILED

**November 8, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I concur in the majority's conclusion that the writ of prohibition should be denied, based solely upon the specific facts underlying the instant case. These facts fail to justify application of the rule prohibiting reapplication for employment to surreptitiously extend the statute of limitations, which rule the majority has incorporated into a new syllabus point. The respondent herein was originally terminated as part of the idling of the petitioner's mine, along with all other employees. As such—and despite the respondent's poorly and inaccurately drafted complaint—the respondent's claim is a singular one of subsequent failure to hire, which statute of limitations commenced as of the date the petitioner refused to rehire him to work at the mine. However, I write separately to make clear that only under these limited and peculiar circumstances does the respondent's claim survive the well-accepted rule that absent a discrete, new act of discrimination, a failure to rehire does not give rise to a new claim or otherwise serve to extend the statute of limitations. I write further to set forth what I believe to be the appropriate analysis to resolve this matter, rather than the somewhat convoluted rationale contained in the majority opinion.

As set forth in the majority opinion, the respondent was on medical leave when the petitioner's mine was idled. Once the mine reopened, he applied for reemployment. At oral argument, the respondent's counsel advised that the allegations

1

contained in the complaint alleging both wrongful discharge (emanating from the original termination when the mine was idled) *and* failure to rehire (arising when respondent reapplied for employment when the mine was reopened) were in error and that the respondent intended to allege only the latter.[1]  Accordingly, with that concession, there was no "original" discharge due to discrimination; rather, the original discharge occurred across the board due to the mine idling and without discriminatory intent.

---

[1] The Court accepts as true the representation by the respondent's counsel and as set forth in the petitioner's brief that the respondent was on medical leave when the original termination due to idling occurred and that the respondent was terminated along with other employees for that reason.  The respondent's complaint supports this contention:  "[A]fter the defendants 'idled' the surface mine further described above, the plaintiff was provided with a valid release to return to work[.]"  However, neither the respondent's brief nor the circuit court's order make that all-important distinction.  The respondent's brief vaguely indicates that he was terminated on April 11, 2012, and that the mine was idled "from April 2012 to January 2014[.]"  The circuit court's order quite erroneously states that the termination preceded the idling and that "almost immediately after Plaintiff's termination the mine was idled[.]"

The distinction is critical:  lack of clarity about the permanence of his original discharge (caused by the termination due to idling rather than some other reason) is all that saves the respondent's claim from the rule discussed herein.  *See* discussion, *infra.*  If the respondent were individually terminated before the mine was idled, such discharge would give rise to a discrete adverse employment action, which, if alleged to be discriminatory, would be independently actionable and subject to the statute of limitations.  It would not, however, give rise to a new or continuing claim of discrimination when he was subsequently denied rehire assuming the same discriminatory animus was alleged.  However, where his discharge was contemporaneous with the mine idling and discharge of the entire workforce, it would be virtually impossible to suggest that such discharge was discriminatory (as expressly conceded by his counsel at oral argument).

Unquestionably, the respondent's inexplicably inaccurate pleadings endangered his claim by creating the impression that he was trying to circumvent the expired statute of limitations by alleging a secondary, subsequent act of discrimination which was pled within the statute. Ordinarily, this pleading error would be construed against the respondent. However, given the representations of both the respondent's counsel *and the petitioner* that the discharge occurred commensurate with the mine idling and *not* as the result of an adverse employment action against the respondent independent of that closure, equity demands that we accept counsel's confession of error in that regard as true. Certainly, any allegation that the respondent was discriminatorily discharged when in fact the mine was idled and he was merely discharged along with other employees would fail on its face. As such, it rings true that the respondent's inclusion of the original discharge claim was in error.

However, given the oddity occasioned by the facts of this case, it is necessary to distinguish and clarify this case such as to avoid abuse of the Court's limited holding. This Court long-ago observed that "failure to rehire after an alleged discriminatory discharge, absent an independent discrete act of discrimination, does not constitute a new or continuing violation of the civil rights law." *Independent Fire Co. No. 1 v. W. Va. Human Rights Comm'n*, 180 W. Va. 406, 411, 376 S.E.2d 612, 617 (1988). The basis for this rule is obvious: "Otherwise, the limitation period could always be circumvented by simply reapplying for employment." *Id.* This rule emanates from

the Eleventh Circuit's conclusion that "a failure to rehire subsequent to an allegedly discriminatory firing, *absent a new and discrete act of discrimination in the refusal to rehire itself*, cannot resurrect the old discriminatory act." *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985) (emphasis added). Viewed properly, the subsequent application merely "seeks to redress the original termination." *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975). *Accord Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 763–64 (11th Cir. 1995) ("Because Hargett alleges the same discriminatory reasons to support his claim of discrimination in rehiring, Hargett fails to demonstrate that the rehire claim is derived from a separate act of discrimination by Valley."); *Riddle v. Citigroup*, 449 F. App'x 66, 71 (2d Cir. 2011) (dismissing claim which "alleged no discrete acts of discrimination and were based on the same alleged conduct underlying [] other untimely claims."). As well-explained by the Seventh Circuit:

> An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination. If it were, then an employee could avoid [time limitations] by filing a series of appeals or fresh requests[.] . . . An applicant does not have to sue about the first wrong to be entitled to contest a second. But when the first decision is connected to and implies the second—when, in other words, a single discriminatory decision is taken, communicated, and later enforced despite pleas to relent—the time starts with the initial decision.

*Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) (citations omitted).

4

The foregoing then begs the question of when a subsequent failure to rehire would constitute a new act of discrimination. First, I would observe that a simple refusal to rehire does not, on its face, necessarily constitute a new act of discrimination. It is this aspect of the majority's opinion with which I take the most issue: while it is difficult to argue that the refusal is not a new *act*, it is not a new act *of discrimination.* The majority's clumsy handling of this issue potentially suggests otherwise.[2] Where a plaintiff alleges the same discriminatory animus which existed at the time of the original discharge—or at a minimum fails to demonstrate that such animus has abated—there is no "new" discrimination. As such, some showing sufficient to demonstrate that a reapplication was not an exercise in futility—because of the continued existence of prior discriminatory animus—is necessary.

To that end, courts have found intermediate changes in substantive policy that produced an initial firing or disparate treatment in the *reinstatement process itself* to be exceptions to the general rule. The majority takes a glancing blow at these exceptions and yet fails to observe the exception applicable herein. With regard to the original adverse employment action, courts have found failures to rehire actionable "in the face of

---

[2] In particular, the majority's unqualified statement that the respondent "alleged a new and discrete act of discrimination [because] . . . the defendants refused to rehire him because of his age and his perceived disability" misses the point entirely. A failure to rehire upon reapplication will always constitute a "new" act by its very definition. It is whether this allegation alleges new *discrimination* that is key.

*uncertainty regarding the initial adverse action.*" *Kaufman v. Perez*, 745 F.3d 521, 529 (D.C. Cir. 2014) (emphasis added). It is this exception that necessitates the relief afforded the respondent herein.[3]

The rationale for this exception was aptly explained by the Seventh Circuit. In *Webb v. Indiana National Bank*, 931 F.2d 434 (7th Cir. 1991), the plaintiff was turned down for the position of corporate trust administrator, then reapplied within the statutory period and was turned down for the same reason—her lack of a college degree. *Id.* at 436. The defendant in *Webb* argued that the plaintiff "should not be permitted by the facile expedient of reapplication to force the court to adjudicate the bona fides of conduct outside the period of the statute of limitations[.]" *Id.* In explaining why the plaintiff's reapplication did not serve to restart her statute of limitations, the court explained:

> Suppose the proper interpretation of the defendant's refusal to consider the plaintiff for the position of corporate trust administrator back in March 1986 just days outside the limitations period is that she would never be considered for the position because she is black; and the plaintiff knew this. Then the refusal to appoint her later was the inevitable consequence of the earlier determination . . . and her suit would indeed be time-barred. . . . Only if the defendant has made clear that the plaintiff will not receive further consideration is the plaintiff on notice of a permanent

---

[3] As indicated, the majority makes brief reference to "futile gesture[s]" and the "permanen[cy]" of the original discharge, but fails to fully set forth the exception and properly apply the facts to reach its conclusion. In so doing, it breeds uncertainty about the application of the new syllabus point it creates: uncertainty that this Court will undoubtedly have to rectify in the future. It is in this regard that I write separately to provide guidance on proper application of these principles.

> exclusion—a freeze, a ceiling on advancement, parallel to a denial of tenure—that starts the statute of limitations running on any future job applications. Or put differently, if it obviously would be futile to make a future application for the job for which he has just been turned down, the plaintiff cannot delay suit and use those futile applications to delay the running of the statutory period indefinitely.

*Id.* at 437. In short, if circumstances objectively demonstrate that a plaintiff's discharge is final and that future attempts at employment would be futile, the plaintiff cannot restart the statute of limitations by reapplying for employment. Certainly, when a plaintiff alleges discrimination in an original discharge it is unlikely that plaintiff is not sufficiently on notice that the discharge is undoubtedly final as pertains to that employer.

As stated, it is this exception to the general reapplication rule that provides the respondent herein relief. Because his original discharge was occasioned by widespread discharge of the work force due to the idling of the mine, the respondent could have reasonably believed that when the mine reopened, he would be considered for employment. There was nothing about the original discharge—certainly no demonstrable discriminatory animus—which would suggest he would be unlikely to be considered upon reopening and therefore would make reapplication futile.

Finally, I wish to clarify one additional point to avoid misconstruction of the majority's somewhat cryptic opinion. Nothing herein should be construed to prohibit an employer from moving to dismiss an action for failure to hire or rehire simply because

7

the employee wisely chooses not to plead an "original" discharge claim which has expired. That is to say, an employee cannot avoid the preclusive effect of the reapplication rule espoused herein by simply ignoring the expired claim. If an employer can demonstrate that a failure to hire or rehire claim actually emanates from an unpled original act of discrimination which has expired and is therefore *not* a new act of discrimination, it should be permitted to present that argument in aid of dismissal.

Accordingly, I respectfully concur.