DUDLEY ENTERPRISES, INC., an Illinois corporation, and Elizabeth M. Simon, Plaintiffs,

v.

PALMER CORPORATION, a New Jersey corporation, Palmer Video Corporation, a New Jersey corporation, Peter Balner, Peter Margaritondo, aka Peter Margo, Paul M. Grassi, Susan Baar, Stan Simms and Gert Elster, Defendants.

No. 92 C 2300.

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1993.

Adam Bourgeois, Sr., Law Office of Adam Bourgeois, Chicago, IL, for plaintiffs.

Kathy Pinkstaff Fox, Robert Leonard Shuftan, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Dudley Enterprises, Inc. (Dudley) and Elizabeth Simon (Simon) bring this action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, against defendants Palmer Corporation (Palmer), Palmer Video Corporation (PVC), Peter Balner (Balner), Peter Margaritondo, aka Peter Margo, (Margo), Charles Arrington (Arrington), Joseph Berger (Berger), Calvin Winick (Winick), Harvey Dossick (Dossick), Susan Baar (Baar), Dominick Romano (Romano), Pater Grassi (Grassi), Kathy Passucci (Passucci), Gert Elster (Elster), and Stan Simms (Simms), alleging that defendants sold plaintiffs a franchise program as part of a scheme to defraud (counts I and II). In addition, plaintiffs allege that defendants committed the following state law violations: (1) violation of the Illinois Franchise Disclosure Act of 1987 (the Act) (count III); (2) Intentional Infliction of Emotional Distress (count IV); (3) Malicious Interference with Business or Occupation (count V); (4) Tortious Breach of Duty of Good Faith and Fair Dealing Arising Out of Contract (Count VI); and (5) Fraud (count VII). Before us now is defendants' motion to dismiss plaintiffs' complaint. Federal subject matter jurisdiction is based on 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332, the parties being of diverse citizenship and the controversy exceeding $50,000. For the reasons stated below, defendants' motion is granted in part and denied in part.

### FACTS

PVC, a New Jersey Corporation, is a franchisor that grants franchisees the right to operate stores under the name "Palmer Video Stores." The video stores sell and rent video cassettes and other products associated with the video trade. Some or all of the shares of stock of PVC are owned by Palmer Corporation. The other named defendants are current or former employees of PVC and/or Palmer, who were in some way involved in the PVC franchise operation.

Since 1982, PVC has offered video store franchises to third parties. Although the

early franchise offerings were made in New Jersey, in or around 1987 PVC expanded its offerings to other states, including Illinois. In 1988, plaintiffs decided to open a retail video store and they contacted PVC in order to obtain additional information about its franchise opportunities. Over approximately a four-month period plaintiffs explored the possibility of opening a PVC franchise store. During those months, plaintiffs allege, they had several telephone conversations with PVC employees and received several documents from PVC explaining and promoting the benefits associated with being a PVC franchisee. According to plaintiffs, PVC provided them with a projected income statement estimating the financial operations of a typical Palmer Video franchise in its first year of operations, and assisted plaintiffs in finding potential site locations for their store.

On December 20, 1988, Simon entered into an agreement whereby she (and subsequently Dudley) became a franchisee of PVC. Simon opened her video store in Niles, Illinois. Dudley, an Illinois corporation, apparently was formed by Simon for the purpose of operating the Palmer Video franchise.[1] Simon is the principal stockholder and the chief executive officer of Dudley.

In their complaint plaintiffs go into great detail about their contacts with PVC and/or its employees, subsequent to their entering into the franchise agreement (plf. cplt. ¶¶ 38–61). Although we consider each of these allegations when reviewing defendants' motion, we decline to recount each element of the complaint in this opinion. To summarize, plaintiffs refer to numerous conversations with and/or letters sent by individual defendants that, according to the plaintiffs, constituted misrepresentations regarding PVC's expertise in operating a national franchise, and programs and other benefits available to a PVC franchisee.

According to defendants, plaintiffs refused to pay the royalties and/or fees that were due the franchisor in accordance with the franchise agreement. PVC terminated plaintiffs' franchise in or around August 1991; never-theless, plaintiffs continue to operate the video store.

## DISCUSSION

Defendants move this court for dismissal of plaintiffs' complaint in its entirety and for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Defendants maintain that plaintiffs' RICO and fraud claims (counts I, II and VII) should be dismissed because (1) plaintiffs have failed to plead those fraud allegations with particularity, as required by Fed.R.Civ.P. 9(b); (2) plaintiffs have named PVC and Palmer as both the "enterprise" and the "person" in violation of § 1962(c) and, therefore, no cause of action can exist as to those corporate defendants; (3) plaintiffs' allegations as to the predicate RICO offenses are insufficient under § 1962(d); and (4) plaintiffs have failed to allege a "pattern" of racketeering activity. Defendants contend that count III, violation of the Illinois Franchise Disclosure Act, should be dismissed because it is time-barred. As to counts IV and V, defendants maintain that plaintiffs failed to state claims upon which relief can be granted because they did not plead the necessary elements to properly set out the respective causes of action, and further claim that count IV is time-barred. Defendants maintain that because plaintiffs have not sued for breach of contract they cannot state a claim for tortious breach of duty of good faith and fair dealing arising out of contract and, therefore, argue that count VI should be dismissed. Finally, defendants contend that plaintiffs' complaint should be dismissed since it violates Rule 8 of the Federal Rules of Civil Procedure because it does not contain "a short and plain statement of the claim."

## I. *Rule 8 and Rule 9(b)*

■ Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs' complaint is by no means short; it contains 111 allegations, with extensive sub-

---

1. We are provided with minimal facts concerning Dudley and are left to surmise that Dudley was formed sometime after Simon signed the franchise agreement with PVC and, subsequently, became the entity that operated the franchise.

paragraphs,[2] that are spread over 46 pages. More importantly, the complaint is confusing, disjointed, and repetitive. We have read the complaint numerous times and, while we are able to decipher the gist of plaintiffs' complaint, we have difficulty sorting out the necessary elements and the factual allegations upon which the claims are based.

We find it especially difficult to make out the basis of plaintiffs' RICO claims. For example, in the section of the complaint entitled "Facts Common to all Counts," plaintiffs recite over the course of 14 pages many of their encounters with PVC employees, as well as letters and/or documents received from the defendants over the course of a three-year period. Many of those facts may be relevant, but the complaint gives no guidance concerning which of those allegations, if any, are supposed to constitute predicate acts under RICO. In paragraphs 70(F)–(H) of the complaint plaintiffs refer generally to conversations and meetings with, and documents received from, PVC's employees, and state that those events occurred "as at least partially specified in this complaint." In order to ascertain what acts plaintiffs are referring to (and to determine whether those allegations have been properly pled), the reader must flip back to the fact section of the complaint in an attempt to pinpoint the corresponding facts. It is not enough for plaintiffs to make such general references to previously stated facts; they must specify what facts they are relying on.[3]

Rule 9(b) applies to both common law fraud and RICO claims, and requires that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." The complaint must set forth the circumstances of fraud, including the time and place of the fraud, the contents of the omissions or misrepresentations and the identity of the party perpetrating the fraud. *In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 619 (N.D.Ill.1987). Although we will not discuss every deficiency in plaintiffs' complaint, we point out that many of plaintiffs' allegations fail to meet the "who, what, when, and where" pleading requirement for fraud. For example, when multiple defendants are involved it is not enough for plaintiffs to allege that "defendants" committed fraudulent acts.[4] *Id.* at 620 (noting that plaintiff cannot group allegations for 9(b), but must specify how individual defendants participated in the fraud). In addition, plaintiffs often fail to allege the contents and/or the time and place of the fraud in their complaint.[5] Finally, we remind plaintiffs that statements expressing an opinion relating to future or contingent events, expectations or probabilities, generally do not constitute an actionable misrepresentation.[6] *Vaughn v. General Foods Corporation*, 797 F.2d 1403, 1411 (7th Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987) (noting that statements about the future of the franchise are "puffing" and are not actionable); *Smith–Victor Corporation v. Sylvania Electric Products, Inc.*, 242 F.Supp.

2. For example paragraph 70 contains 41 subparagraphs and paragraph 68 contains 12 subparagraphs.

3. We further caution plaintiffs not to repeat factual allegations throughout their complaint. Stating the allegation with the requisite particularity in one section is enough.

4. *See e.g.*, plf. cplt. ¶ 28 (alleging "defendants sent plaintiffs a letter" with a number of representations); plf. cplt. ¶ 32 (alleging "defendants sent plaintiffs other documents and information"); plf. cplt. ¶ 70(A) (alleging that "defendants advertised in trade magazines and other trade related publications"); plf. cplt. ¶ 70(D) (claiming "defendants prepared and disseminated a document" with materially false statements").

Plaintiffs continually refer to "defendants" and not to a specific party. While many times we assume plaintiffs are referring to PVC, it is not our place to make this determination and Rule 9 requires that plaintiffs identify the individual party associated with the fraudulent act.

5. Again, we note that because the reader is forced to move back and forth while reading the complaint, it is often unclear whether such details (the "what" and "when") are provided.

6. For example, one of the representations referred to in the complaint is a statement by Winick where he told plaintiffs that "this was their lucky day" and that Palmer was "the best in the business." Such statements would not amount to an actionable misrepresentation. (Plf. cplt. ¶ 27).

302, 308 (N.D.Ill.1965) (noting that the statement that one product is superior is not actionable).

We are careful to read Rule 8 and Rule 9 together and are conscious of the fact that those two rules must be balanced—the complaint must be a "short and plain" statement, but it must also include complicated fraud allegations that are pled with particularity. Nevertheless, plaintiffs' complaint fails in both respects. The complaint is long and confusing and therefore it is difficult to determine whether Rule 9 has been satisfied. However, from what we are able to unravel from the complaint, plaintiffs have not supplied the required facts to support their fraud allegations. We therefore dismiss the complaint in its entirety without prejudice and grant plaintiffs leave to amend in order to bring it into compliance with Rules 8 and 9(b). Plaintiffs, if they so wish, may submit an amended complaint to this court within 30 calendar days from the date of entry of this order.

## II. *RICO Claims*

■ Although we have dismissed plaintiffs' complaint, we nevertheless address defendants' arguments regarding the RICO claims since plaintiffs may file an amended complaint before this court. Plaintiffs allege RICO violations under § 1962(c) and (d). Under § 1962(c) it is unlawful for any person employed by or associated with an enterprise to conduct or participate in the affairs of the enterprise through a pattern of racketeering. Any person who conspires to violate the provisions of subsections (a), (b) and (c) is in violation of § 1962(d). Both subsections of § 1962 have in common three fundamental elements. For each subsection there must be a "person", an "enterprise", and a "pattern of racketeering activity", and such elements must be pled separately in the complaint. *R.E. Davis Chemical Corporation v. Nalco Chemical Co.*, 757 F.Supp. 1499, 1507 (N.D.Ill.1990).

### A. The Enterprise and the Person Must Be Distinct

■ Under RICO, "persons" are the individuals or entities that committed the prohibited acts and are the only ones who can be held liable under the statute. The "enterprise," which may be an individual or an entity, is the vehicle through which the "persons" execute the racketeering activity. *R.E. Davis,* 757 F.Supp. at 1507. Under both § 1962(c) and (d), the enterprise and the person must be distinct. In other words, the corporation cannot be an enterprise and also be liable as a person under these two sections of the statute. While plaintiffs agree that Palmer and PVC cannot be both the enterprise and the persons that committed the predicate acts under § 1962(c) and (d), they maintain that they need discovery in order to determine the "exact contours of the enterprise." Plaintiffs argue that after discovery they may realize that only one of the corporations is the enterprise, or that the enterprise is an association-in-fact enterprise, or that allegations under § 1962(a) or (b) are appropriate.[7]

■ Plaintiffs, however, cannot be afforded the luxury of waiting until after discovery in order to determine the facts needed to sufficiently plead their claims. Allowing this "discovery exception" would give plaintiffs the opportunity to file claims as a pretext to uncover unknown wrongs and would be unfair to defendants, who are entitled to sufficient notice of the elements of the RICO claim in order to prepare a defense. We cannot permit such a pleading process where plaintiffs would be allowed to submit an insufficient complaint in hopes that later they could obtain additional information that would provide the necessary fillers to make their complaint satisfactory. Therefore, plaintiffs have not made out a cause of action against the corporate defendants and neither PVC nor Palmer may be held liable under RICO.

---

**7.** Under § 1962(a) and (b) no separation of enterprise and person is required and a corporation-enterprise can be held liable. *Haroco, Inc. v. American National Bank and Trust Co. of Chi-* cago, 747 F.2d 384, 402 (7th Cir.1984), *cert. denied,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

## B. Plaintiffs Must Allege That Each Defendant Committed at Least Two Predicate Acts

■ In order to adequately state a § 1962(c) or (d) RICO claim, plaintiffs must allege that defendants engaged in a pattern of racketeering activity. This requires plaintiffs to establish that each individual defendant committed at least two predicate acts. *R.E. Davis,* 757 F.Supp. at 1509.

■ First, plaintiffs argue that, even if each of the defendants did not personally participate in each act, they knew about the misrepresentations and "knew about or could foresee the acts of others." (Plf. brief at 10). They maintain that in that type of situation a defendant may be held responsible for the acts of others.[8] Plaintiffs' argument applies, however, only in the narrow situation where the alleged enterprise is also a conspiracy. If the enterprise is nothing but a conspiracy among individuals, then it is reasonable to attribute the acts of one member to the other. *R.E. Davis,* 757 F.Supp. at 1515. However, when "the enterprise is not a conspiracy—a legitimate corporation, for example—then there is no quality inherent in the nature of the enterprise which would permit the acts of one member of the enterprise to be attributed to the other members." *Id.* Liability then must be limited to those individuals who have personally committed at least two predicate acts of racketeering.

■ Plaintiffs have alleged that PVC and Palmer, rather than a conspiracy among the defendants, constitute the enterprise for purposes of its RICO claim. And, PVC and Palmer are legitimate corporations. Thus plaintiffs cannot attribute the acts of one defendant to the other, but must establish that each defendant engaged in two or more predicate acts.

Second, plaintiffs argue that discovery will enable them to "flesh out the individual acts of each of the defendants" to the extent that additional information is needed to comply with their pleading requirements. As we mentioned earlier, plaintiffs are required to specifically plead the elements of their RICO claim in their complaint. We cannot grant plaintiffs additional leeway, through discovery, in hopes that they obtain additional information to make their complaint satisfactory.

Plaintiffs have failed to establish that defendants Margo, Arrington, Berger, Winick, Dossick, Baar, Romano, Grassi, Passucci, Elster and Simms each committed two predicate acts of racketeering. Therefore, a pattern of racketeering has not been shown and the RICO claims against those defendants are dismissed.

## C. Plaintiffs Must Allege a Pattern of Racketeering Activity

■ Even if we were to assume that plaintiffs had alleged that each defendant committed two or more predicate acts of racketeering with sufficient particularity, plaintiffs would nevertheless be required to establish a pattern of racketeering. Plaintiffs must allege not only that defendants engaged in at least two predicate acts, but that the predicate acts are related *and* amount to or pose a threat of continuing criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1988) (holding that the "continuity plus relationship" combines to produce a pattern); *Midwest Grinding Co., Inc. v. Spitz,* 769 F.Supp. 1457, 1463 (N.D.Ill.1991); *R.E. Davis,* 757 F.Supp. at 1517.

■ The relationship prong of the pattern requirement is satisfied when the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Hartz v. Friedman,* 919 F.2d 469, 472 (7th Cir.1990) (quoting *H.J., Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901). Plaintiffs' allegations appear to meet the relationship test since the acts were committed upon the same victim (Simon/Dudley), were similar types of activities (calls, letters, etc., related

---

8. Plaintiffs refer to *U.S. v. Kuzniar,* 881 F.2d 466 (7th Cir.1989), for support of this proposition. *Kuzniar* is a criminal conspiracy case where the acts of one defendant were attributable to the other members of the conspiracy.

to the franchise operation), and because they were not isolated events.

■ Defendants contend, however, that plaintiffs have failed to establish the continuity element. Since *H.J. Inc.*, it has been very difficult for plaintiffs to satisfactorily demonstrate continuity. *Midwest Grinding*, 769 F.Supp. at 1464 (pointing out that in each case since *H.J. Inc.*, the Seventh Circuit has not found the necessary continuity to establish a pattern of racketeering). Continuity exists where either there has been repeated conduct over a closed period of time, or where the racketeering activity by its nature projects into the future with a threat of repetition. *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2901. The Supreme Court and the Seventh Circuit, however, have been careful to recognize the purpose of RICO—to "reach activities that amount to or threaten long-term criminal activity"—when evaluating the continuity requirement and therefore have generally not applied RICO when the threat is an individual one, rather than a significant threat to society. *H.J. Inc.*, 492 U.S. at 243 n. 4, 109 S.Ct. at 2902 n. 4; *U.S. Textiles, Inc. v. Anheuser–Busch Companies*, 911 F.2d 1261, 1267 (7th Cir.1990); *Midwest Grinding*, 769 F.Supp. at 1470.

■ With this in mind, we examine plaintiffs' allegations to determine whether continuity has been established. In order to perform this continuity analysis we turn to four factors which the Seventh Circuit has considered relevant when examining the pattern requirement: (1) the number and variety of acts and length of time over which they are committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 594 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990); *Midwest Grinding*, 769 F.Supp. at 1463.

■ The first factor concerns the number of acts and the period of time over which they occurred. Plaintiffs allege a scheme that lasted for several years and involved a considerable number of instances of fraud—mostly mail and wire fraud. Although this would seem to tip the scale in favor of finding a pattern, the Seventh Circuit has noted that mail and wire fraud are "unique among predicate acts" and may be "no indication of the requisite continuity of the underlying fraudulent activity." *U.S. Textiles, Inc.*, 911 F.2d at 1268 (citation omitted). As in *U.S. Textiles*, each of plaintiffs' fraud allegations refers to the same event—their becoming and remaining a franchise operation. Furthermore, the scheme had a definite conclusion since the franchisor-franchisee relationship was terminated in August 1991. *Midwest Grinding*, 769 F.Supp. at 1467 (noting that a factor to consider when determining if a pattern exists is whether there is a definite conclusion to defendant's conduct).

Second, we look to the number of victims. Although plaintiffs have not specifically referred us to other victims, they have stated that the fraud involves numerous victims and "continued over many years both as to plaintiffs and other franchisees" (plf. resp. at 12). It is certainly reasonable to infer from plaintiffs' allegations that defendants' alleged fraudulent practice has affected, or could affect in the future, other franchisees.

The third factor refers to the number of schemes that defendants allegedly engaged in. Plaintiffs refer to the number and types of allegations made in their complaint and maintain that they have alleged "that the defendants devised and executed a number of schemes which were intended to defraud existing and potential franchisees." We disagree. Plaintiffs' allegations refer to one scheme: that they were fraudulently induced into becoming and remaining a Palmer Video franchise. The alleged activities essentially concern business relations between plaintiffs and defendants, and matters regarding plaintiffs' individual franchise operation.

Finally, we look to the fourth factor, the occurrence of distinct injuries. Plaintiffs have not alleged, nor can we find, the occurrence of distinct injuries. The economic injury felt by plaintiffs stems from their entering into the franchise agreement and remaining a franchise operation.

Based on the facts and circumstances of this case, plaintiffs may have difficulty in establishing a pattern of racketeering activity

sufficient to support a RICO claim. While their allegations would probably provide sufficient bases for common law claims, such as a contract claim or business fraud, they are not the type of allegations at which the RICO statute was aimed, at least so long as the focus of the case is the relationship between plaintiffs and defendants.[9] *U.S. Textiles*, 911 F.2d at 1269 (stating that the scheme, which related to a single contract, was not an appropriate RICO claim since there was no significant societal threat); *Midwest Grinding*, 769 F.Supp. at 1470 (noting that where defendant's conduct threatens plaintiff and was not a societal threat, then RICO should not apply and plaintiff should consider other common law claims).

### III. *Common Law Claims*

Since we have dismissed plaintiffs' complaint we need not address each of defendants' arguments concerning the common law claims at this time—we will address those items if plaintiffs decide to amend their complaint. Nevertheless, we will deal with the statute of limitations issues raised by defendants as to counts III and IV.

#### A. Illinois Franchise Disclosure Act

■ Defendants argue that count III of plaintiffs' complaint, alleging violations of the Illinois Franchise Disclosure Act, must be dismissed because plaintiffs made their claim after the limitations period of the Act. Section 1727 of the Act provides that any action brought thereunder must be made before the expiration of whichever of the following *first* occurs: (1) 3 years after the act or transaction constituting the violation upon which it was based; (2) one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief; or (3) 90 days after delivery to the franchisee of written notice disclosing the violation. Defendants maintain that because plaintiffs' claim was based on their being "duped into entering the franchise agreement," the pertinent acts that constitute the violation of the Act must have occurred prior to December 1988 (the date the franchise

agreement was signed) and, therefore, argue that the statute of limitations period expired three years later, in December 1991. Although we disagree with defendants' reasoning, we agree with their conclusion, at least with respect to plaintiffs' § 1706 claim. Section 1706 concerns fraudulent practices that occur in "connection with the offer or sale of any franchise." Thus, the "act or transaction constituting the violation" upon which a § 1706 claim is based, is the sale or offer of the franchise to the franchisee. Plaintiffs entered into a franchise agreement in December 1988 and, therefore, plaintiffs' § 1706 claim is time-barred because it was filed in April 1992, which is beyond the Act's three-year statute of limitations period.

■ However, plaintiffs also have included a claim under § 1719 of the Act. Under § 1719, it is a violation for a franchisor to terminate a franchise without "good cause." Defendants argue that plaintiffs cannot maintain this claim because "even a cursory reading of Section 26 of the Act" informs the reader that private plaintiffs cannot maintain a private cause of action under § 1719. We disagree with defendants' reading of § 1726 and hold that plaintiffs are permitted to bring a private cause of action under § 1719 of the Act. *Original Great American Chocolate Chip Cookie Company, Inc. v. River Valley Cookies, Limited*, 970 F.2d 273, 279 (7th Cir.1992) (addressing private party's civil claim under § 1719 of the Act). Plaintiffs' § 1719 claim is not time-barred since the complaint was filed in April 1992, which is within one year of when the franchise was terminated and meets even the strictest of the statute of limitations conditions under the Act.

#### B. Intentional Infliction of Emotional Distress

■ Defendants move to dismiss plaintiffs' claim for intentional infliction of emotional distress pursuant to the Illinois two-year statute of limitations provision. Defendants argue that the acts which allegedly inflicted emotional distress upon plaintiffs are those related to plaintiffs becoming a

---

**9.** Plaintiffs, having diversity, have alleged and can maintain other common law claims before the court that may more appropriately address their grievances.

franchisee and that such actions occurred prior to December 1988. In the alternative, defendants argue that the statute of limitations expired two years after plaintiffs knew or should have known of the claim, and maintain that plaintiffs knew of the alleged fraudulent representations as early as March 1990. Defendants maintain, therefore, that the limitations period expired either in December 1990 or, at the latest, in March 1992.

We disagree with defendants' arguments and hold that count IV is not time-barred. Plaintiffs' allegations relate to defendants' conduct and representations both prior to their entering into the franchise agreement and after the entering into of the agreement. Plaintiffs argue that because the injury resulted from a continuing course of conduct the two-year limitations period was not a bar and, therefore, maintain that their cause of action did not accrue until the last act was committed. We agree. In Illinois, where a tort involves a continuing or repeated injury, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease. *Ganousis v. E.I. du de Nemours & Co.*, 803 F.Supp. 149, 153 (N.D.Ill.1992); *Hyon Waste Management Services v. Chicago*, 214 Ill. App.3d 757, 158 Ill.Dec. 335, 338, 574 N.E.2d 129, 132 (Ill.App.1991). Although the continuing tort doctrine does not apply to situations where there is one act from which subsequent damages flow, that is not the case here. *Id.* Plaintiffs have alleged that Balner committed several tortious acts over the course of three years.[10] When we consider a motion to dismiss we must accept the plaintiffs' allegations as true, and view them, along with any reason inferences drawn from them, in the light most favorable to plaintiffs. We therefore conclude that defendants' alleged misrepresentations and tortious conduct were continuous, and hold that plaintiffs' action is not time-barred.

---

10. In their complaint plaintiffs rely on various letters and conversations with Balner throughout the three-year period. *See, e.g.,* plf. cplt. ¶¶ 28, 43, 53, 70(F)(2), 70(G).