Ruby **HONORABLE,** Mack Williams, Marilyn Williams, Shirley Rollins, Stekeena Rollins, Norris Boston, Martha Boston, Donald Brown, and Sonya Brown, individually and on behalf of all others similarly situated, and South Austin Coalition Community Council, Plaintiffs,

v.

**THE EASY LIFE REAL ESTATE SYSTEM, INC., Ace Realtors, Inc., Richard Nelson, and Louis Prus, Defendants.**

No. 97 C 6009.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1998.

Nina E. Vinik, Chicago Lawyers' Committee for Civil Rights, Thomas F. Geselbracht, Jill Anne Glickstein, Rudnick & Wolfe, Chicago, IL, for Plaintiffs.

Victor F. Ciardelli, Ciardelli & Cummings, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The individual plaintiffs and the South Austin Coalition Community Council ("SACCC") filed this action against the defendants, The Easy Life Real Estate System, Inc. ("Easy Life"), Ace Realtors, Inc. ("Ace"), Richard Nelson, and Louis Prus, alleging that they engaged in a scheme to defraud and a scheme to discriminate against the individual plaintiffs in violation of federal and state laws. The individual plaintiffs move to certify their case as a class action. The defendants move to dismiss all claims against them. For the reasons set forth below, the motion for class certification and the motion to dismiss are granted in part and denied in part.

#### Background

The plaintiffs allege that they are victims of the defendants' scheme to defraud and scheme to discriminate against the residents of the overwhelmingly minority Austin community. The individual plaintiffs, all African American, claim that they purchased poorly rehabilitated and overpriced homes from the defendants and that hundreds of other residents have also purchased homes from the defendants under similar circumstances. SACCC, a nonprofit organization in the Austin community, alleges that it has been collecting complaints against the defendants and has incurred significant costs in responding to those complaints.

The plaintiffs allege that the facts behind the scheme to defraud and the scheme to discriminate are as follows: Mr. Prus is the President of Easy Life and Ace, both real estate agencies. Mr. Nelson is an officer, director, and registered agent of Easy Life and is an agent for Ace. Beginning in 1986 and continuing to the present, Mr. Nelson and Mr. Prus, both white, have purchased houses in Austin that are fire-damaged, abandoned, and/or in foreclosure. Subsequently, they have made cosmetic repairs to hide substantial defects before marketing the houses for resale through Easy Life or Ace. Easy Life or Ace place advertisements in the Chicago Sun Times and the Austin Voice for the sale of "renovated", "newly rehabbed" homes to "first time home buyers." The advertisements promise that homes can be purchased with down payments as low as $500 to $1,000.

The individual plaintiffs all allegedly responded to these advertisements and were told that they could qualify for the homes. They claim they decided to purchase their homes through Easy Life or Ace based on the false representations in the advertisements and the similar false representations of Easy Life or Ace agents. They say the agents then prepared a contract with inflated prices for the homes and did not permit any price negotiation. At that time, they paid a down payment of $500 to $1,000.

Prior to closing, Easy Life or Ace agents allegedly told the individual plaintiffs that they did not need an independent inspection of the property and discouraged them from inspecting the property. The individual plaintiffs say that the agents told them that they did not need to procure their own attorney but that Easy Life or Ace would provide them with an attorney for the closing. They also claim the agents selected the banks through which they could obtain mortgage loans secured either by the Federal Housing Administration ("FHA") or the Department of Housing and Urban Development ("HUD"). They state that they were not advised that financing was available elsewhere.

At the closing, Mr. Nelson or Mr. Prus, as sellers of the properties, allegedly signed documents certifying to the banks and HUD that they had not given the buyers any part of the cash down payment. The plaintiffs claim that the statements were false as Easy Life or Ace had previously told the individual

plaintiffs that more money was needed for the down payment to obtain a FHA loan. An agent of Easy Life or Ace allegedly accompanied a relative or friend of the individual plaintiffs to a bank and gave the individual plaintiffs cash to deposit into the relative's or friend's account. The relative or friend then immediately withdrew the funds in the form of a certified check payable to Easy Life or Ace for the additional down payment. The agents often required the relative or friend to execute a gift letter.

When the individual plaintiffs moved into their homes, they say they discovered that the condition of the properties was not as represented in the print advertisements or verbal statements of the defendants. They claim the properties were not rehabbed or renovated but had numerous defects such as total lack of insulation, faulty plumbing, leaky roofs, faulty furnaces, faulty electrical wiring, and inadequate heating. They state that they complained to the defendants and were assured that the homes would be repaired but that the defendants never made any repairs. Consequently, they claim they expended large sums of money to repair their homes and that because of these expenses, they risk falling or have fallen behind on their mortgages and risk losing their homes through foreclosure.

Based on these facts, the plaintiffs brought suit alleging that the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, 42 U.S.C. §§ 1981 and 1982, the Fair Housing Act, 42 U.S.C. § 3604(b),[1] the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, various sections of the Illinois Real Estate License Act of 1983, 225 ILCS

455/18(h)(2), (3), (12) and (16), and committed common law fraud. They seek injunctive relief and declaratory relief as well as monetary damages.

### Class Certification

■■■ The individual plaintiffs move to certify their case as a class action. In considering a motion for class certification, the court takes the plaintiffs' allegations in support of certification as true and does not examine the merits of the case. *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The burden is on the plaintiffs to establish their entitlement to class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993).

As an initial matter, the court must determine whether the class definition is proper. *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977) (agreeing that Rule 23 implicitly requires that class members be identifiable). The proposed class consists of "all persons in the Austin neighborhood who have purchased homes from Easy Life and/or Ace since 1986 and who may in the future purchase homes from Easy Life and/or Ace." The defendants contend that the proposed class is improper because there is no objective criteria to determine the individuals who are "future" home purchasers who will be injured in the future and entitled to damages.[2]

■■■ "The fact that the class includes future members does not render the class definition so vague as to preclude certification." *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 (9th Cir.), *cert. denied*, 476 U.S.

---

1. The plaintiffs allege an exploitation theory of discrimination in housing under 42 U.S.C. §§ 1981, 1982, and 3604(b). *See* discussion on exploitation theory, *infra*, at 563. To allege an exploitation theory, the plaintiffs must state that as a result of racial residential segregation, a dual housing market exists and the defendants have taken advantage of the situation by demanding unreasonable prices and terms in excess of prices and terms available to white citizens for comparable housing. *Clark v. Universal Builders, Inc.*, 706 F.2d 204, 210 (7th Cir.1983).

2. The defendants also argue that the proposed class definition contains persons who are satisfied with Easy Life's services and therefore the class representatives' claims are not typical of the class and that the class definition renders the case unmanageable because it requires mini-trials and adjudications of the state of mind of each class member, damages, oral misstatements, reliance, and the statute of limitations going back to 1986. These arguments do not go to class definition but to class certification and are addressed below under the prerequisites for Rule 23 class certification.

1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). The class is being defined by reference to the defendants' conduct and its members can easily be identified. *See Rochford,* 565 F.2d at 977–78 (finding that classes defined by the defendants' conduct is sufficiently definite). The defendants know that when they sell a home to a person in the Austin neighborhood in the future, that person will be part of the class.

Furthermore, it is not *per se* improper to certify a class with future class members. A court may find that a class with future members is improper because the class representatives cannot properly represent current class members and future members. For example, the Supreme Court in *Amchem Products., Inc. v. Windsor,* 521 U.S. 591, ——, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997), stated that the named plaintiffs could not adequately represent current and future members of the class because of the nature of the settlement. Where there are limited funds, the goal of the current class members to receive generous immediate payments conflicts with the goal of future members to ensure that there is ample, inflation-protected funds to cover future damages. *Id.* at 2250–51. But if the class, which includes future members, satisfies all the requirements for certification, the case may proceed as a class action.

To obtain class certification, the individual plaintiffs must satisfy the four requirements of Rule 23(a) and one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). The failure to meet any single requirement precludes class certification. *Id.*

### A. *Rule 23(a)*

The four prerequisites for a class action under Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The defendants contend that the individual plaintiffs cannot establish typicality and adequacy of representation.

■ The numerosity requirement is met. SACCC states that it has received complaints from over 100 Austin residents who purchased homes from Easy Life or Ace. (Welch Aff. ¶ 3). Joining all these individuals would be impracticable.

■ To satisfy the Rule 23(a) commonality requirement, the individual plaintiffs need only demonstrate that at least one question of law or fact is common to all class members. *Spencer v. Central States, Southeast & Southwest Areas Pension Fund,* 778 F.Supp. 985, 989 n. 2 (N.D.Ill.1991). In this case, there are common questions of law or fact such as whether the housing market in Chicago and Austin is racially segregated and whether the defendants exploited the dual housing market in Austin in violation of the individual plaintiffs' civil rights.

■ The final two requirements under 23(a) inquire into whether the proposed class representative is the proper party to represent the class. The class representative's claim must be typical of the claims of the class. It is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions* § 1115(b), at 185 (1977)). The class representative must also be able to adequately represent the class.

The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, . . . (2) the named representative must have sufficient interest in the outcome to ensure vigorous advocacy, . . . and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*Gammon v. GC Servs. Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995) (citations and quotations omitted).

■ Here, the defendants contend that Ruby Honorable, Mack Williams, Marilyn Williams, Shirley Rollins, and Stekeena Rollins are not adequate representatives with typical claims. They argue that these plaintiffs signed the HUD statements which they now claim are false and thus, unlike other members of the proposed class, they are not innocent victims but are subject to a unique *in pari delicto* defense.[3]

■ Where "a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). The existence of defenses unique to the named plaintiff does not automatically preclude a finding of typicality, however, because "[r]ule 23(a)(3) mandates the typicality of the named plaintiffs' claims—not defenses.... [I]t is only when a unique defense will consume the merits of a case that a class should not be certified." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 58 (N.D.Ill.1996) (quoting *Riordan,* 113 F.R.D. at 63). For example, in *Koos,* the plaintiffs brought an action under the Illinois usury statute but were potentially excepted from the statute because of the type of loan they received. 496 F.2d at 1164–65. The Seventh Circuit upheld the denial of class certification finding that the *Kooses* could not adequately represent the class because much of their effort would have been devoted to determining whether they were covered by the usury statute rather than an examination of whether the defendants violated the statute. *Id.* at 1165.

The *in pari delicto* defense does not consume the merits of the case. It relates primarily to the bank fraud RICO claim which is only one of the several claims brought against the defendants. Furthermore, whether or not the named plaintiffs are equally responsible for the bank fraud is addressed only after the plaintiffs establish

that there was bank fraud. Thus, the *in pari delicto* defense is not a basis for finding the class representatives inadequate or their claims atypical.

The class representatives' claims are otherwise typical of the class. According to the complaint, the defendants engaged in a scheme to sell poor quality, over-priced homes to persons living in the segregated Austin Community. The representatives, like other members of the proposed class, purchased a home in Austin from the defendants, allegedly relied on a series of misrepresentations by the defendants, were provided a substantial portion of their down payment by the defendants, obtained a government-insured mortgage loan through a lender designated and arranged by the defendants, and discovered after moving into their homes that the condition of their homes was not as represented.

The class representatives can also adequately represent the class. As noted above, the alleged unique defense against five of the nine class representatives does not conflict with the interests of the other class members. The class representatives have sufficient interest in this case as manifested by the detailed factual background they provided for the complaint. They have engaged qualified counsel in both the areas of civil rights and real estate litigation.

■ Finally, although the class members include future unidentified persons, the named representatives can adequately represent those persons since future damages are not an issue in this case. The plaintiffs are seeking prospective injunctive relief to protect future purchasers. The nature of injunctive relief is to protect persons who might otherwise be injured in the future if the defendants are permitted to continue their alleged unlawful conduct.

### B. Rule 23(b)(2)

■ The plaintiffs contend that the civil rights and fair housing claims can be certified as a class action under Rule

---

**3.** The defendants also claim that discovery in this case will show that all plaintiffs signed similar HUD statements. If this is true, then any *in pari*

*delicto* defense would not be unique to the class representatives but would be typical of the class.

23(b)(2). An action may be maintained as a class action under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). "Generally applicable" means that the defendants acted consistently toward the class such that their actions may be viewed as part of a pattern of activity. *Buycks–Roberson,* 162 F.R.D. at 334 (citing *Edmondson v. Simon,* 86 F.R.D. 375, 382–83 (N.D.Ill.1980)). "All the class members need not be aggrieved by or desire to challenge the defendant's conduct .... " *Edmondson,* 86 F.R.D. at 383. Thus, if the defendants acted consistently toward the class, 33 class members' alleged satisfaction with the defendants' actions does not preclude class certification.

 The individual plaintiffs allege that the following conduct is generally applicable to the class as a whole: that since 1986, the defendants have discriminated against members of the plaintiff class by selling homes to African Americans in the Austin community at unfavorable prices and terms when compared to prices and terms available to whites for comparable homes. They allege the defendants preyed on the plaintiff class by targeting their advertising to unsophisticated, first-time home buyers in the racially segregated Austin community, materially misrepresenting the condition and value of homes offered for sale, fraudulently arranging for government-insured mortgage loans, and making misrepresentations about future repairs. The plaintiffs seek to enjoin this pattern of activity. These allegations are sufficient to support certification of the civil rights and fair housing claims under Rule 23(b)(2). *See Amchem,* 521 U.S. at ——, 117 S.Ct. at 2245 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [of Rule 23(b)(2) class actions].").

 To the extent the plaintiffs want damages for the civil rights violations, "[r]ule 23(b)(2) does not preclude monetary damages when it is 'either part of the equitable relief granted or is secondary or ancillary to the predominant injunctive or declaratory relief sought.' " *Orlowski v. Dominick's Finer Foods, Inc.,* 172 F.R.D. 370, 375 (N.D.Ill. 1997) (quoting *Edmondson,* 86 F.R.D. at 383). Certification of a class is still possible to determine liability for a pattern of activity and for injunctive relief. *See Orlowski,* 172 F.R.D. at 375 (certifying the class and proceeding to trial in two phases, the first establishes liability and the second adjudicates whether individual plaintiffs are entitled to monetary relief); *Buycks–Roberson,* 162 F.R.D. at 335 (certifying the class for injunctive relief during the liability phase and appointing a special master to hear individual claims for damages). Thus, I will certify the discrimination claims as a class action for liability purposes.

## C. Rule 23(b)(3)

 The plaintiffs further contend that the remaining claims can be certified under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The defendants object to the certification claiming that class treatment is inappropriate for damages purposes, that there are many individual issues as to what oral misstatements the defendants made, and that a class action is unmanageable.

The damages issue in this case is not appropriate for class resolution. There are individual issues as to how much was paid for the houses and how much was spent on repairing the houses. More importantly, there are individual issues as to liability. Other than the advertisements that Easy Life and Ace placed in newspapers, the majority of the plaintiffs' claims of fraud and misrepresentation are based on oral misstatements made by the defendants. To determine whether the oral statements are false, the court would have to examine every conversation that occurred. Accordingly, common questions of law and fact do not predominate and a class action is not appropriate on the remaining claims.

*Motion to Dismiss*

Initially, the defendants move to dismiss the complaint for failure to comply with Federal Rules of Civil Procedure 8(a)(2) and (e)(1). In the alternative, the defendants move to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[4]

*A. Rules 8(a)(2) and 8(e)(1)*

██ Rule 8(a)(2) states that a complaint should be a "short and plain statement of the claim showing that the pleader is entitled to relief." Further, Rule 8(e)(1) requires that "[e]ach averment of a pleading shall be simple, concise, and direct." The purpose of these rules is to provide the defendants with fair notice. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 775 (7th Cir.1994). Lengthy and confusing complaints make it difficult and costly for defendants to file responsive pleadings and for trial courts to conduct orderly litigation. *Id.* at 776.

Complaints have been dismissed in their entirety for being unnecessarily lengthy and confusing. *See, e.g., Dudley Enters., Inc. v. Palmer Corp.,* 822 F.Supp. 496, 500 (N.D.Ill. 1993) (dismissing 46–page complaint where it was difficult to sort out the necessary elements and factual allegations upon which the claims were based); *Mutuelle Generale Francaise Vie v. Life Assurance Co.,* No. 87 C 10014, 1988 WL 139415, at *2 (N.D.Ill. Dec. 19, 1988) (dismissing 41–page, 228–paragraph complaint as "unclear", "difficult to follow", "difficult to answer", "an ill-organized short story" and "redundant, unnecessary or vague"). This complaint, however, is necessarily lengthy. It is also straightforward. The first 30 paragraphs outline the parties, jurisdiction, venue, class allegations, and the general facts of the case. Paragraphs 31 to 97 state the facts as they relate to each of the individual plaintiffs. Paragraphs 98 to 167 state the seven counts, including two racketeering counts under RICO and two fraud counts, all which need to be pled with particularity. *See* Fed. R.Civ.P. 9(b); *Dudley,* 822 F.Supp. at 500.

This complaint, although lengthy, gives the defendants fair notice of plaintiffs' claims.

*B. Counts I and II: RICO*

██ The elements of a RICO violation are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). A pattern of racketeering requires at least two predicate acts of racketeering in the last ten years. *Id.* The plaintiffs' RICO counts allege that the defendants committed more than two acts of bank fraud in violation of 18 U.S.C. § 1344. In particular, the defendants are alleged to have falsely stated to banks that they had not given any of the down payment to the plaintiffs.

The defendants move to dismiss the RICO counts on the ground that plaintiffs do not have standing because they are not victims of bank fraud. The Seventh Circuit in *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.,* 61 F.3d 1250 (7th Cir.1995), *cert. denied,* 517 U.S. 1220, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996), addressed a similar issue. In *Israel,* one travel agency allegedly sent fraudulent information, through the mails, to customers of a rival travel agency. *Id.* at 1253–54. The rival brought a civil RICO claim, alleging that the mail fraud on its customers caused it to lose those customers' business. The Seventh Circuit held that the rival agency did not have standing to bring the RICO claim because only customers, and not competitors, were within the "zone of interests" protected by the mail fraud statute, 18 U.S.C. § 1341. *Israel,* 61 F.3d at 1258.

██ 18 U.S.C. § 1344 is a bank fraud statute. The statute provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by

4. On a motion to dismiss for failure to state a claim, matters outside of the pleadings should

not be considered. The parties' 12(M) and 12(N) Statements are excluded.

means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The statute is intended to protect financial institutions and not those who may be derivatively affected by fraud committed upon a financial institution. The plaintiffs, who are not financial institutions, do not have standing to bring these RICO counts.[5]

*In re EDC, Inc.*, 930 F.2d 1275 (7th Cir. 1991), cited by the plaintiffs, is not to the contrary. In *EDC*, the plaintiff alleged that the defendants conspired to create a new company that would emit signs of life just long enough to dissuade the Pension Benefit Guaranty Corporation ("PBGC") from reimposing liability on the old company for vested pension benefits. *Id.* at 1278–79. The plaintiffs, creditors of the new company, lost the money they lent. The Seventh Circuit held that although the PBGC was the primary victim in this scheme, the creditors were also intended victims and could maintain a suit under RICO where the predicate acts were mail and wire fraud. *Id.* at 1279. Although in the present case, according to plaintiffs' allegations they were intended victims of fraud, the bank fraud statute doesn't protect them. Defendants' motion to dismiss the RICO counts is therefore granted.

### C. Counts III and IV: Housing Discrimination

#### 1. Exploitation Theory

■ Counts III and IV assert an exploitation theory of discrimination in housing under 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act, 42 U.S.C. § 3604(b). In *Clark v. Universal Builders, Inc.*, 706 F.2d 204, 207, 210–11 (7th Cir.1983), the Seventh Circuit recognized an exploitation theory of discrimination in housing. To allege an exploitation theory, the plaintiffs must claim that as a result of racial residential segregation, a dual housing market exists and the defen-

dants have taken advantage of the situation by demanding unreasonable prices and terms in excess of prices and terms available to white citizens for comparable housing. *Id.* at 210. The plaintiffs made this allegation in their complaint and nothing further is required at this time. The defendants' claim that they did not have the market power to exploit the dual housing market cannot be decided on a motion to dismiss.

#### 2. Statute of Limitations

The statute of limitations for claims for violation of 42 U.S.C. §§ 1981 and 1982 and 42 U.S.C. § 3604(b) is two years. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 836–37 n. 1 (7th Cir.1992); 42 U.S.C. § 3613(a)(1)(A). The plaintiffs filed this action on August 25, 1997. The defendants claim that the cause of action for Ruby Honorable, Mack Williams, and Marilyn Williams (the "Honorable plaintiffs"), and for Norris Boston and Martha Boston (the "Boston plaintiffs") accrued on the closing date of their respective purchases: December 1, 1994 and December 10, 1993.

■ A Section 1981 and 1982 action must be brought no later than two years from when the plaintiffs "knew or should have known of actionable discriminatory acts." *Burkes v. McDonald's Corp.*, No. 96 C 7093, 1997 WL 28300, at *4 (N.D.Ill. Jan. 21, 1997) (quoting *Bailey v. Northern Ind. Pub. Serv. Co.*, 910 F.2d 406, 412 (7th Cir.1990)). The alleged discriminatory acts in this case are the sale of homes to the individual plaintiffs at unreasonable terms and prices. The defendants argue that on the above closing dates, the Honorable and Boston plaintiffs should have known that they had purchased homes at unreasonable terms and prices, and thus, the two-year statute of limitations has run.

■ Although the individual sales to the Honorable and Boston plaintiffs may fall outside the statute of limitations period, they allege that the defendants' discrimination is a

---

**5.** I have considered *National Credit Union Admin. v. First National Bank & Trust Co.*, 522 U.S. 479, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998), and conclude it does not change this result. It is too

far a stretch to say consumers—let alone those alleged to have participated—even if unknowingly, in alleged bank fraud, are within the zone of interests protected by that statute.

continuing violation so that their claims are not time-barred. Under the "continuing violation" doctrine, a plaintiff may "get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). The theory behind the doctrine is that the discriminatory nature of an act may only become apparent in light of subsequent events. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994). The "continuing violation" doctrine is not available if the plaintiff "knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him." *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir.1993).

■ The plaintiffs in this case filed a class action alleging an exploitation theory of housing discrimination. They claim that because of the dual housing market, the defendants discriminated against the class on the basis of their race by selling them homes at prices and terms unreasonably in excess of those provided to whites. They allege that each home buyer could not know that the defendants were exploiting the dual housing market based on the sale of one home, especially when the defendants allegedly made false representations to conceal that fact. Only after they learned that defendants engaged in a pattern of similar sales practices against other African Americans in the Austin community could they know that the defendants had the power to exploit the dual market and discriminate against them on the basis of their race. The plaintiffs state they learned of this pattern in 1996, within the limitations period.

The 42 U.S.C. § 3604(b) claim also is not barred by the statute of limitations. The plaintiffs in this case do not challenge just one incident of conduct violative of the Fair Housing Act, but an unlawful practice that continues into the limitations period. Thus, the claim is timely if it is filed within two years of the last asserted occurrence of that practice. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The last sale alleged in the complaint closed on November 30, 1995, with-in the limitations period. Thus, the claim is not time barred.

### D. Count V and VI: Fraud

The plaintiffs brought common law and statutory fraud claims, alleging that the defendants defrauded them by lying to them about the condition of the homes, the intentions to repair the homes, and the homes' true value. They say the defendants made these false statements of material fact with the intent to induce the plaintiffs to purchase the homes.

The defendants move to dismiss these state law claims for lack of subject matter jurisdiction. Since at least one federal count remains in this case, the court has supplemental jurisdiction over the related state law claims.

■ In the alternative, the defendants move to dismiss the claims for failure to state a claim. To state a claim for common law fraud, a plaintiff must allege (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intended to induce the plaintiff to act; (4) action by the plaintiff in reliance upon the truth of the representation; and (5) damage to the plaintiff as a result. *Board of Educ. v. A, C and S, Inc.*, 131 Ill.2d 428, 452, 546 N.E.2d 580, 591, 137 Ill.Dec. 635, 646 (1989). To state a claim for fraud under the Consumer Fraud Act, the plaintiff must allege (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Perona v. Volkswagen of America, Inc.*, 276 Ill.App.3d 609, 614, 658 N.E.2d 1349, 1352, 213 Ill.Dec. 328, 331 (1st Dist.1995). The defendants claim that the plaintiffs did not allege any false statements of material fact or deceptive acts.

■ Plaintiffs have insufficiently alleged both common law and statutory fraud with regards to the price and the conditions of the house. They alleged that the defendants quoted a price for the homes and stated that the homes were "newly rehabbed", "Victorian rehabbed", and "renovated" when they knew the market price was lower and that the

homes were only cosmetically repaired. The problem with plaintiffs' complaint is that the terms alleged can mean anything. They are subjective and incapable of proof. *See Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill.App.3d 154, 163, 109 Ill.Dec. 541, 510 N.E.2d 409 (1986).

In addition, defendants' promises to repair, although allegedly false, were not relied upon by the plaintiffs in deciding to purchase their homes. The promises to repair were made after the sale of the homes and could not have induced the plaintiffs to purchase.

Defendants' motion to dismiss plaintiffs' fraud counts is granted.

### E. Count VII: Illinois Real Estate License Act

The defendants move to dismiss this count for lack of subject matter jurisdiction. Since at least one federal count still remains, I have supplemental jurisdiction over this state law claim. The defendants also move to dismiss the count for seeking unlawful remedies or in the alternative, to strike some of the remedies. The Illinois Real Estate License Act, 255 ILCS 455/32, allows any resident citizen "to enjoin any person from such unlawful activity" in violation of the Act. Thus, I will not dismiss the count but will only allow the plaintiffs to seek injunctive relief pursuant to 255 ILCS 455/32.

### Conclusion

For the foregoing reasons, the plaintiffs' motion for class certification and the defendants' motion to dismiss are granted in part and denied in part.